HANNAH C. COOK *et al.*

*v.*

CHARLES PATRICK *et al.*

*Filed at Springfield January 21, 1891.*

1. DELIVERY OF DEED—*sufficiency*. Where a deed is delivered to one who has no authority from the grantee to receive it, yet the grantee may ratify the act of acceptance, and the delivery will be good, even in cases where the deed is made without the grantee's knowledge. In such case, the person accepting as agent need not make any delivery of the deed to the grantee before it takes effect.

2. A person purchased lands with his own means, and took deeds to another, professing to act as agent for the grantee, but in fact the grantee had no knowledge of the transaction. The actual purchaser took possession of the lands, and received the rents, issues and profits during his life, without having had the deeds recorded. On his death the grantee had the deeds recorded, and took possession: *Held,* that there was a valid delivery of the deeds, and acceptance by the real purchaser as agent for the grantee, which the latter ratified.

3. RESULTING TRUST—*whether it arises*. It is a principle of the law, that where one buys property and pays the purchase money with his own funds, and has the title placed in the name of a third person, a resulting trust arises in favor of him who has so paid the purchase money, and he is regarded as the equitable owner of the property bought. But there are various exceptions to this doctrine.

4. Such a trust is founded on presumptive intention, and is designed to carry that intention into effect,—not to defeat it. If it is not the intention of the party paying the price, that the estate shall vest in himself, then no resulting trust will attach to the property.

5. There may be a resulting trust as to a part of the property bought or a part of the interest therein, and not as to the residue, according to the intent existing in each particular case. In this case, the facts and circumstances show an intention on the part of the person buying and paying the price, but taking the deed in the name of another, to create a resulting trust in the use of the property only for his life.

6. As the trust results to the real purchaser by presumption of law, the nominal purchaser is at liberty to rebut such presumption by the production of parol evidence showing the intention of conferring the beneficial interest. He may repel the presumption *in toto* or in part, according to the fact.

Writ of Error to the Circuit Court of McDonough county; the Hon. Charles J. Scofield, Judge, presiding.

Messrs. Smith & Helmer, and Messrs. Prentiss & Bailey, for the plaintiffs in error:

If Stinson bought the land and paid for it, he is the equitable owner, although the deed was made to a third person. *Emmons* v. *Moore*, 85 Ill. 304; *Loomis* v. *Loomis*, 28 id. 454; *Franklin* v. *McEntyre*, 23 id. 91.

As to what constitutes a delivery of deeds, see *Wiggins* v. *Lusk*, 12 Ill. 132; *Stinson* v. *Anderson*, 96 id. 373; *Benneson* v. *Aiken*, 102 id. 284; *Insurance Co.* v. *Campbell*, 95 id. 267; *Stiles* v. *Probst*, 69 id. 382; *Herbert* v. *Herbert*, Breese, 278; *Stillwell* v. *Hubbard*, 20 Wend. 44; *Patterson* v. *Snell*, 67 Me. 559; *Shurtleff* v. *Francis*, 118 Mass. 154; *Wood* v. *Ingraham*, 51 Am. Dec. 671.

The case last cited, we think, is directly in point, and many authorities on the point are cited in it.

To constitute a *donatio mortis causa,* the gift should be full and complete at the time, passing from the donor the legal power and dominion over the thing intended to be given. The mere handing of the deeds to Georgetta Patrick, with the request that she keep them, was not a delivery to Charles and Martha P. *Bradley* v. *Hunt*, 23 Am. Dec. 597; *Williams* v. *Forbes*, 114 Ill. 167; *Richardson* v. *Hadsall*, 106 id. 476; *Gilmore* v. *Whiteside*, 31 Am. Dec. 563; *Young* v. *Young*, 8 N. Y. 422; 36 Am. Rep. 634.

To this last case we call special attention. We think it settles the question, that so long as Stevenson lived, and reserved to himself any right and interest in the lands and personal property in dispute, the gift contended for by the Patricks was not completed, and that the arrangements he made about his property, to take place after his death, did not constitute a valid gift. *Walter* v. *Ford*, 74 Mo. 195; 41 Am. Rep. 312.

If the evidence of Georgetta Patrick is true that Stevenson handed her the notes and deeds several days before he died, and told her to take them and take care of them, there was nothing in that act that would have prevented Stevenson from reclaiming all of this property, had he recovered. It can not be said that Stevenson, at any time during his life, by any act of his, put his property beyond his control while living. *Hoig* v. *Adrian College,* 83 Ill. 267.

What is not a gift of money, see *McCord* v. *McCord,* 77 Mo. 166; 46 Am. Rep. 9; *Curry* v. *Powers,* 70 N. Y. 212; 26 Am. Rep. 577.

Messrs. Tunnicliff & Tunnicliff, and Mr. C. F. Wheat, for the defendants in error:

The delivery of the notes to a third person, for the use and benefit of the donee, is a good delivery. *Borneman* v. *Sidlinger,* 15 Me. 429; *Hill* v. *Stevenson,* 63 id. 364; *Grymes* v. *Hone,* 49 N. Y. 17; *Hildebrant* v. *Brewer,* 6 Texas, 45; *Session* v. *Moseley,* 4 Cush. 87; *Blaisdell* v. *Locke,* 52 N. H. 238; *Constant* v. *Schuyler,* 1 Paige, 316; *Hunter* v. *Hunter,* 19 Barb. 631; *Wells* v. *Tichner,* 3 Binn. 366; *Grover* v. *Grover,* 24 Pick. 262.

As to the delivery of the deeds, see *Walter* v. *Ford,* 74 Mo. 195; *McCord* v. *McCord,* 77 id. 166; *Hoig* v. *Adrian College,* 83 Ill. 267; *Curry* v. *Powers,* 70 N. Y. 212; *Bryan* v. *Wash,* 2 Gilm. 557; *Bradley* v. *Hunt,* 5 Gill & J. 54.

As to a resulting trust, see *Loomis* v. *Loomis,* 28 Ill. 454; *Franklin* v. *McEntyre,* 23 id. 91.

As in the cases we have been considering the trust results to the real purchaser by presumption of law, which is merely an arbitrary implication in the absence of reasonable proof to the contrary, the nominal purchaser is at liberty to rebut the presumption by the production of parol evidence showing the intention of conferring the beneficial interest. 1 Lewin on Trusts, 270, 271; *Hays* v. *Quay,* 68 Pa. St. 263; *Myers* v.

*Myers,* 1 Casey, 100; *Smith* v. *Howell,* 1 Stockt. 349; *McCue* v. *Gallagher,* 23 Cal. 51; *Rolles* v. *Clark,* 25 id. 317; *Creel* v. *Bank,* 1 Ohio, 1; *Bottsford* v. *Burr,* 2 Johns. Ch. 405; *Lake* v. *Lake,* Amb. 126·; *Lane* v. *Dighton,* id. 409; *Partridge* v. *Havens,* 10 Paige, 618; *Hall* v. *Hill,* 1 D. & W. 114; *Sidmouth* v. *Sidmouth,* 2 Beav. 447; *Williams* v. *Williams,* 32 id. 370.

The evidence to rebut need not be as strong as the evidence to create a trust. *Nicholson* v. *Mulligan,* 3 Irish Eq. 332.

That a resulting trust may be established or rebutted by parol evidence has been recognized by this court in *Taylor.* v. *Taylor,* 4 Gilm. 303, and *Maxwell* v. *Maxwell,* 109 Ill. 588.

Mr. JUSTICE BAKER delivered the opinion of the Court:

In 1820 a young man, who was known in the community as William L. Stevenson, was living and keeping hotel at a place called Downerville, in the State of Kentucky. He subsequently removed to Lexington, in that State, and was there engaged in the boot and shoe business for a number of years. He was married at Lexington on May 4, 1834, to one Catherine B. Patrick, and four children were born of the marriage. A few years after the birth of these children he failed in business and became insolvent, and then his wife and two of the children died. In 1856 he removed, taking his two remaining children with him, to Colchester, in the State of Illinois, where several brothers of his deceased wife were living, and were engaged in merchandising. He was at first a clerk in the store of John Patrick, then a clerk in the store of William Patrick, and then took charge of the store of the latter. Subsequently he was engaged in a partnership business with Charles Patrick, one of the defendants herein, who was the son of another brother of his deceased wife. His other two daughters, Ellen and Mary, died without issue in 1856 and 1857, respectively.

In the years 1859, 1860, 1861, 1863, 1865, 1866, 1869 and 1874, said William L. Stevenson bargained for and purchased various tracts of land and town lots, and paid for the same

with his own money, and at the time of the purchase of each of said several premises the deeds therefor were, by his special direction, made to Martha P. Patrick, (now Ringer,) Charles Patrick and Georgetta Patrick, the defendants in error, respectively, some of said conveyances being made to one and some to another of said three persons. These conveyances were delivered to Stevenson, were not recorded until after his death, and were held and retained in his possession until after or shortly before his decease. Upon the delivery of each of said deeds to Stevenson he took possession of the premises in each deed described, and used and controlled the same, and received the rents, issues and profits thereof, and repaired and built houses thereon, and with his own money or with money received from rents, and paid all taxes thereon out of his own moneys, but taking receipts for such taxes in the names of the several grantees mentioned in each of said respective deeds, severally. Said Stevenson also loaned various sums of his own money to different persons, and other persons became otherwise indebted to him in various amounts, and for such loans and other indebtedness he took promissory notes. Some of these notes were made payable to himself, and others, by his special direction, made payable to Georgetta Patrick, and many of these latter notes were secured by mortgages on real estate, and the mortgages, by his direction, made to said Georgetta. These notes and mortgages were delivered to said Stevenson and retained in his possession, and he collected all the accrued interest thereon which was paid prior to his death.

Said Stevenson died intestate, at Colchester, on April 6, 1881, being some eighty or ninety years of age, and leaving surviving him no widow or descendants. Charles Patrick was appointed administrator of his estate. The deeds to said Charles Patrick, and to Martha P. Patrick (now Ringer) and Georgetta Patrick, were placed upon record by them, and they thereupon severally claimed the absolute ownership of the tracts of land and town lots deeded to them, respectively, and

took possession of the same, and collected and appropriated the rents, and made sales and conveyances to other persons of various parcels thereof.

The present bill in chancery was exhibited in the McDonough circuit court by the plaintiffs in error, Hannah C. Cook and others, against Charles Patrick and his two sisters, and the purchasers of real estate from them. It is claimed in the bill that the man commonly called William L. Stevenson, who died intestate at Colchester on the 6th day of April, 1881, was in truth and in fact one William L. Stinson, a son of one Robert Stinson, of Bodenham, in the State of Maine, and that they, the plaintiffs in error, are the heirs-at-law of the said William L. Stinson, deceased. It is also claimed in the bill, that the deeds to the Patricks were not delivered to them in the lifetime of the intestate, and that the latter, when he died, was the real owner of all the real estate described in said deeds, and that the notes and mortgages taken by the intestate remained in his possession and control during his lifetime, and were his property at the time of his death. The prayer of the bill, succinctly stated, is, that the real estate and personal property in question be decreed to be the property of the plaintiffs in error, that all conveyances made by the Patricks of said real estate be set aside, and that the Patricks account for all moneys collected from notes, bonds, accounts and sales of said property.

Answers were filed and issues formed, and upon the hearing of the cause the court found that the promissory notes which were made payable to W. L. Stevenson were not given by said Stevenson, in his lifetime, to Georgetta Patrick, so as to invest her with the title to them or the proceeds thereof, and that said Georgetta had, under claim of ownership, and since the death of said Stevenson, collected $547.47 on said notes, and that said $547.47, and the unpaid notes which had been made payable to said Stevenson, belonged and were due to the estate of said Stevenson. It was ordered and decreed that

said Georgetta pay said $547.47 collected by her, and deliver the residue of the notes so payable to Stevenson, within sixty days, to the administrator, and that the administrator account to the estate for said money and notes. The court further found that plaintiffs in error were not entitled to any other or further relief in the premises than that above mentioned, and as to all other and further matters the bill was dismissed. Plaintiffs in error are dissatisfied with the limited measure of relief that was decreed to them upon their bill of complaint, and bring the record to this court.

We deem it unnecessary to consider in detail the various assignments of error. There are several matters in controversy which may be disposed of quite briefly. We are inclined to think that the evidence sufficiently shows the indentity of the man commonly called William L. Stevenson, who died at Colchester, in this State, in 1881, with the William L. Stinson of Bodenham, in the State of Maine, who left that State early in the present century for the purpose of avoiding the vengeance of the brother of a girl whom he had wronged. We will also assume, for the purposes of the decision, that the allegations of the bill and the proofs introduced at the hearing make it manifest that plaintiffs in error are heirs-at-law of said William L. Stinson, deceased.

It is claimed by plaintiffs in error that there was no such delivery of the deeds to the grantees named therein as would pass to them the titles to the lands. It would seem that in order to divest the several grantors in said deeds of their titles, it is essential to the claim made by said plaintiffs in error that the deeds should be regarded as properly delivered. But waiving this, and waiving any consideration of the testimony tending to show an actual delivery of the conveyances by Stevenson, *alias* Stinson, to Georgetta Patrick, for said grantees, we think that a sufficient delivery of the deeds, and acceptance of the same by the several grantees named therein, appear from the evidence. Stevenson, in making the purchases and taking the

deeds, assumed to be acting as agent of the nominal purchasers mentioned in the respective deeds, although he was in fact acting without their knowledge. At the times of the various purchases the grantors in the several deeds delivered the same to Stevenson, the supposed agent, absolutely and unconditionally, and for the express purpose of divesting themselves of their respective titles and vesting such titles in the grantees named in the said several conveyances. Subsequently, said grantees accepted and approved the acts of the self-constituted agent, and fully ratified and confirmed the same by accepting the deeds and having the same recorded, and claiming title under them. If a deed is delivered to one who has no authority from the grantee to receive it, yet the grantee may ratify the act of acceptance, and the delivery will be good, even in cases where the deed is made without the grantee's knowledge. *Morrison* v. *Kelly*, 22 Ill. 610; *Rawson* v. *Fox et al.* 65 id. 200; *Crocker* v. *Lowenthal et al.* 83 id. 579; *Bryan* v. *Wash*, 2 Gilm. 557; *Byars et al.* v. *Spencer et al.* 101 Ill. 429.

The grantors in the several deeds parted with all dominion over them when they delivered them to Stevenson, *alias* Stinson, and as the latter was not a grantor in any of the deeds, it was not essential that he should deliver them, or any of them, to the grantees, or that there should be a delivery of them to such grantees in his lifetime. The absolute delivery of the deeds to Stevenson, and the acceptance of them by him, and the subsequent ratification by the grantees of such acts of acceptance, were amply sufficient to invest such grantees with title. We do not regard the cases cited by plaintiffs in error, where the deeds were not delivered by the grantors and did not pass from their control and dominion in their lifetimes, and where it was held that there was no divestiture of the titles of such grantors, as here in point. We think the material questions in the case are, whether or not there were resulting trusts in favor of Stevenson, *alias* Stinson, and if so, in respect to the nature, character and extent of such trusts.

It is suggested by counsel, that if Stinson bought the lands and paid for them with his own money, then he was the equitable owner of such lands, although the deeds were made to third persons. It is a principle of the law, that where one buys property and pays the purchase money with his own funds, and has the title placed in the name of another person, a resulting trust arises in favor of him who has so paid the purchase money, and he is regarded as the equitable owner of the property bought. But to this doctrine of implied trusts there are various exceptions, qualifications and limitations. Such a trust is a mere creature of equity, founded upon presumptive intention, and designed to carry that intention into effect,—not to defeat it. If it is not the intention that the estate shall vest in him who pays the purchase price, then no resulting trust in his favor attaches to the property; and there may be a resulting trust as to a part of the property, or a part of the interest therein, and not as to the residue, according to the intent existing in each particular case.

In 2 Story's Equity Jurisprudence, (sec. 1202,) it is said: "There are other exceptions to the doctrine of a resulting or implied trust, even where the principal has paid the purchase money, or, perhaps, more properly speaking, as the resulting or implied trust is, in such cases, a mere matter of presumption, it may be rebutted by other circumstances established in evidence, and even by parol proofs, which satisfactorily contradict it; and resulting and implied trusts in such cases may in like manner be rebutted, as well to part of the land as to part of the interest in the land purchased in the name of another. Thus, where A took a mortgage in the name of B, declaring that he intended the mortgage to be for B's benefit, and that the principal, after his own death, should be B's, and A received the interest therefor during his lifetime, it was held that the mortgage belonged to B after the death of A."

In Lewin on Trusts and Trustees, *206, *207, it is said: "As the trust results to the real purchaser by presumption of

law, which is merely an arbitrary implication in the absence of reasonable proof to the contrary, the nominal purchaser is at liberty to rebut the presumption by the production of parol evidence showing the intention of conferring the beneficial interest; and as he may repel the presumption *in toto,* so he may in part, as, by proving the purchaser's intention to permit the legal tenant to enjoy beneficially for life." See, also, 1 Perry on Trusts, sec. 139; 2 Pomeroy's Eq. Jur. sec. 1040, note 1; Bispham's Eq. sec. 83, p. 94.

*Benbow* v. *Townsend,* 1 Mylne & Keene, 506, was in many respects like the case at bar. It was there held, that where land was purchased with the money of A, in the name of B, the resulting trust to A may be rebutted as to part of the land or part of the interest in the land; and also held, that where A took a mortgage in the name of B, declaring that the principal sum should be for the benefit of B, and received the interest during his life, the property, after the death of A, will belong to B, by force of the parol declaration. The Master of the Rolls there said: "In the case of *Lloyd* v. *Spillet,* 2 Atk. 148, and also in the case of *Lane* v. *Doghton,* Amb. 409, it is expressly decided that a resulting trust may be rebutted as to part of the land comprised in a deed and prevail as to the remainder; and if it can be rebutted as to a part of the land, there can be no reason why it may not be rebutted as to a part of the interest in the land. But in this case, the trust being of personal estate, the case is not within the Statute of Frauds, or the doctrine of resulting trusts under that statute, but the property will belong to the brother after the testator's death, by force of the testator's declaration that the £2000 should, after his death, be the property of his brother Job." It appears from the report of the case, that the brother, Job, knew nothing of the transaction of the taking of the mortgage, etc. It also appears therefrom that the same point was there made in argument that seems to be made in the case at bar,—that the equitable title raised by the parol evidence must be exactly

·commensurate with the legal title on the face of the instrument. From the conclusion reached it is manifest that it was ·considered that it was competent for A, who loaned the money, ·to reserve a portion of the equitable interest in the mortgage to himself, giving the remainder of it, as well as the legal title, to his brother. See, also, *Maddison* v. *Andrew*, 1 Ves. Sr. 58.

In *Rider* v. *Kidder*, 10 Ves. Jr. 360, while the case was the converse in respect to the interests retained and donated, the principle was the same, and Lord Chancellor ELDON said: "Upon the evidence, the utmost intended was to secure to her (meaning the nominal purchaser) an income; and if that, ·only, was intended, it by no means destroys the existence of a trust, for if the intention was to give to her an estate for life, not dependent upon his will, still the capital would be his."

*Emmons* v. *Moore*, 85 Ill. 304, is an authority in this State which fully recognizes the principle, that where a person buys land and pays the consideration money, and takes the deed in the name of another, parol evidence is admissible to show that the real purchaser is not intended to be the beneficiary ·of the resulting trust, and to indicate who is the donee of the beneficial interest under such trust.

It only remains to apply the rules of equity above stated, ·to the facts of the present case. William L. Stinson abandoned ·the home of his boyhood, and left behind him his relatives and the friends of his youth. He went to another and a distant State, changed his name, and formed other and different attachments. He married, and a family of children were born to him. Then, one by one, his wife and all four of his children died. It is manifest from the evidence, that after the loss of his own immediate family he was more intimate with the relatives of his deceased wife than with any one else, and that he was particularly attached to the nephew and the nieces of his deceased wife, who are the defendants herein. Shortly after the death ·of his last surviving child he commenced buying real estate, paying therefor with his own money, and taking conveyances

of the property bought, some in the name of Charles Patrick, the nephew, and some in the name of Martha P. Patrick, (now Ringer,) one of the nieces. He persisted for more than ten years in making such purchases and taking such deeds. He also, from time to time, loaned money belonging to himself, and took notes and mortgages therefor, and had the notes made payable to the other of said nieces, Georgetta Patrick, and had the mortgages executed to her as mortgagee. He retained possession of the deeds, notes and mortgages. He also took and retained possession of the lands and lots purchased, and received the rents of the same, and repaired and built houses thereon, and paid the taxes levied on the same. He was always particular, however, to have the tax receipts made out in the names of the respective grantees to whom the particular lot or tract of land had been deeded. He also collected and used as he saw fit, the interest moneys falling due on the notes and mortgages. He expressly directed the deeds to be made as they were made; he refused to accept conveyances made to himself as grantee, and insisted that the deeds should name one or another of the Patrick children as grantee; he frequently announced to different vendors, borrowers, and others, that he was buying the property, or loaning the money, as the case might be, for the Patrick children, or the Patrick girls; he often spoke of the property as Mattie's, Charley's or Georgie's; he frequently spoke of having bought property and of having caused the deeds to be made to said children, and said that when he got through with the property, Charley and the girls should have it; he often said that he intended the property should go to the Patrick children; that Charley and the girls should have it; that no one else had any right to it or should touch it; that he had it fixed,—had it all arranged,— and that no one else could do anything with it.

From these facts, and from numerous other circumstances that appear in the record, it is evident that when William L. Stinson, *alias* William L. Stevenson, made his various pur-

chases of real estate, and took deeds in the name of one or another of the defendants in error, he, as well as the several vendors, fully intended to vest in said several defendants in error the legal titles to such real estate, and that when he loaned money and took notes and mortgages in the name of Georgetta Patrick, he intended to vest in her the legal title to said notes and mortgages, and that he also fully intended to reserve and retain to his own use a life estate in the equitable interest in said realty, notes and mortgages, and to give to defendants in error, respectively, and to vest in them, severally, the remainder and residue of the equitable interest, estate and title in such real estate, notes and mortgages, respectively. Such was the manifest intention of the intestate. There is no rule of law or of equity which will operate to prevent such intention from being carried into effect. The means that were adopted by the intestate for the purpose of accomplishing the disposition he desired to make of his own property were such as contravene no rule of law, and were such as the rules of equity recognize and enforce.

The decree of the circuit court is affirmed.

*Decree affirmed.*