(No. 52202.—

*In re* ESTATE OF MARJORIE WILSON (The People of the State of Illinois, Appellant, v. Elmer H. Wilson, Ex'r, Appellee).

*Opinion filed June 20, 1980.—Rehearing denied September 26, 1980.*

William J. Scott, Attorney General, of Springfield (Gail A. Moreland, Paul J. Bargiel, and Patricia Rosen, Assistant Attorneys General, of Chicago, of counsel), for the People.

Robert W. Cook and William G. Kellar, Jr., of Schmiedeskamp, Robertson, House, Neu & Mitchell, of Quincy, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Elmer H. Wilson is the executor of the estate of his wife, Marjorie Wilson, who died on July 14, 1973. At the time of her death she held a checking account, United States government bonds, 1,610 shares of Moorman Manufacturing Company stock, and real estate—all in joint tenancy with her husband, Elmer Wilson. Mr. Wilson filed an Illinois inheritance tax return and listed the joint tenancy property on the appropriate schedule, but he claimed that the property was not subject to inheritance tax because the decedent made no contribution to the acquisition of the above property. Objections to the return were filed by the Illinois Attorney General. The circuit court of Adams County held that evidence of resulting trust was admissible, but that the stipulated facts were insufficient to establish a resulting trust. Therefore, inheritance tax was due on the jointly held property. The appellate court reversed, finding that a resulting trust existed in the case of the 1,610 shares of Moorman Manufacturing Company stock and the checking account, thus enabling Mr. Wilson to avoid the inheritance tax under section 375(5) of the Illinois inheritance and transfer taxes law (Ill. Rev. Stat. 1973, ch. 120, par. 375(5)). (71 Ill. App. 3d 882.) We granted the State's petition for leave to appeal.

The primary issue is whether, upon the death of Mrs. Wilson, there transferred a sufficient interest in the property she held in joint tenancy with Mr. Wilson to be taxable under the Illinois inheritance and transfer taxes law.

The following facts were stipulated to by the parties. Elmer and Marjorie Wilson were married on October 7, 1931. Mrs. Wilson was never employed during the marriage, and she never received any assets from her family

other than personal items of little intrinsic value. Mr. Wilson was employed by the Moorman Manufacturing Company, whose bylaws provided that only stockholders could be directors in the company. Mr. Wilson became a director on May 11, 1943, and general manager on October 5, 1943. He made his first purchase of 150 shares of stock in 1942. These were purchased entirely with Mr. Wilson's contribution and were registered solely in his name. He next purchased stock in 1945, but this time he had the stock registered "Elmer H. Wilson and Marjorie D. Wilson, his wife, in joint tenancy with the right of survivorship." Mr. Wilson chose that form of registration to make less expensive and simpler the transfer of the stock to his wife on his death. He intended that she have "a right of survivorship," but he did not intend to give her any present interest in the stock. In 1946, Mr. Wilson changed the registration on his original 150 shares of stock to joint tenancy with his wife. At other times during 1946 he purchased additional stock in the company and registered it all in joint tenancy with his wife.

In 1947, C. A. Moorman, the president of the Moorman Manufacturing Company, offered Mr. Wilson a gift of 500 shares of Moorman stock, but, at Mr. Wilson's suggestion, the shares were given to Mrs. Wilson and registered in her name. Mr. Wilson purchased additional shares of stock in his name and his wife's as joint tenants so that by August 3, 1950, 1,610 shares were registered in the names "Elmer H. Wilson and Marjorie D. Wilson, his wife, in joint tenancy with right of survivorship." The jointly held shares were purchased entirely with Mr. Wilson's contribution, and he considered the joint shares to be his alone and at no time did he intend that his wife have a present interest in them, although he did intend that she receive them on his death. All dividend checks on the joint stock were made payable to "E. H. Wilson" alone,

and he always voted the stock, even though Mrs. Wilson never signed a proxy.

A checking account at the Mercantile Trust and Savings Bank, Quincy, was opened in 1933 by Mr. Wilson, as an individual account. In 1943 he changed the registration of the bank account to joint tenancy with Mrs. Wilson. In so doing it was not Mr. Wilson's intent to give his wife any present interest in the account, but only to make for an easy transfer upon his death.

Mr. and Mrs. Wilson held other assets in joint tenancy, including shares of Investors Mutual, Inc., United States savings bonds, and a home located in Quincy. While the contributions for these assets came solely from Mr. Wilson, the trial court found no indication in the stipulation of his intent at the time of their acquisition that he retain the beneficial interest in this property. We are not concerned with these items of property on this appeal.

After Marjorie Wilson's death, her husband and surviving joint tenant was appointed executor under her will and in that capacity filed an Illinois inheritance tax return. He listed the joint tenancy property on the appropriate schedule, but claimed it was for informational purposes only and not property that was subject to taxation in Marjorie's estate.

The Attorney General filed objections to the return, arguing that section 1(5) of the Illinois inheritance and transfer taxes law (Ill. Rev. Stat. 1973, ch. 120, par. 375(5)) is specifically intended to cover all assets held in joint tenancy regardless of the contribution of each joint tenant. Since the property is held or registered in joint tenancy, it is argued that the inheritance tax was properly assessed and any extraneous circumstances regarding contribution or equitable ownership are irrelevant.

The executor, Mr. Wilson, argued that although the property was held in the form of joint tenancy, the court should impose a resulting trust because of his intent that

Mrs. Wilson not have a present interest. The circuit court agreed with the executor that a court could look to the circumstances surrounding the ownership of the property and impose a resulting trust, but held the facts were insufficient to impose one. The appellate court disagreed with this conclusion and found a resulting trust as a matter of law as to the 1,610 shares of Moorman Manufacturing Company stock and the checking account held in joint tenancy, based on the source of the contributions used to purchase the property and the stipulated intent of Mr. Wilson. They did not find a resulting trust on the other jointly held property due to a lack of evidence of Mr. Wilson's intent. The appellate court then held that since there was a resulting trust for the benefit of Elmer Wilson, no beneficial interest passed to him on his wife's death; thus, no tax could be imposed on the assets under section 1(5). We do not agree with the appellate court's conclusion.

The rules for establishing a resulting trust are the product of judicial construction. A resulting trust, characterized as an "intent enforcing" trust (G. Bogert, Trusts and Trustees sec. 451, at 611 (2d ed. rev. 1977)), is created by operation of law and has its roots in the presumed intention of the parties. (*Wright v. Wright* (1954), 2 Ill. 2d 246, 250; *Craven v. Craven* (1950), 407 Ill. 252, 260; *Tuntland v. Haugen* (1948), 399 Ill. 595, 602; *Murray v. Behrendt* (1948), 399 Ill. 22, 28; *Cook v. Blazis* (1937), 365 Ill. 625, 628; *Tritchler v. Anderson* (1929), 334 Ill. 211, 215-16.) This court has, in a variety of factual situations, made the following observations. A purchase money resulting trust generally arises where one person purchases property with his own funds and title is taken in the name of another. (*Suwalski v. Suwalski* (1968), 40 Ill. 2d 492, 495; *Wright v. Wright* (1954), 2 Ill. 2d 246, 250; *Kane v. Johnson* (1947), 397 Ill. 112, 117; *Link v. Emrich* (1931), 346 Ill. 238, 242.) Resulting trusts arise at the instant

legal title is taken. (*Craven v. Craven* (1950), 407 Ill. 252, 260; *Murray v. Behrendt* (1947), 399 Ill. 22, 28; *Spina v. Spina* (1939), 372 Ill. 50, 56.) The trust is founded "upon the natural equity that he who pays for the property should enjoy it, unless he intended by the vesting of title to confer a beneficial interest upon the grantee." (*Bowman v. Pettersen* (1951), 410 Ill. 519, 524.) The burden of proof is upon the party seeking to establish a resulting trust and the evidence must be clear, convincing and unmistakable. (*Wright v. Wright* (1954), 2 Ill. 2d 246, 251; *Jones v. Keopke* (1944), 387 Ill. 97, 104; *Paluszek v. Wohlrab* (1953), 1 Ill. 2d 363, 366; *Heineman v. Hermann* (1943), 385 Ill. 191, 199.) The payment of consideration raises a *prima facie* presumption of a resulting trust which may be rebutted by proof of an intention that the grantee take a beneficial interest and not merely legal title. The purchaser's intention must be gathered from the facts and circumstances of each individual case. *Bowman v. Pettersen* (1951), 410 Ill. 519, 524; *Peters v. Meyers* (1951), 408 Ill. 253, 258; *Dodge v. Thomas* (1914), 266 Ill. 76, 87.

Since the law surrounding resulting trusts was created to enforce the intent of the parties, certain rebuttable presumptions have evolved based on the relationship of the parties. Where a husband purchases property and title is taken in the name of his spouse, a rebuttable presumption of a gift arises. (*Scanlon v. Scanlon* (1955), 6 Ill. 2d 224, 231.) A presumption of gift also arises where the husband pays the purchase price but ownership is taken in joint tenancy with his wife. It is deemed to have been intended by the husband that the wife should have the right to half the benefits for the life of each and, if she survives him, she should be the full owner. (*Abraham v. Abraham* (1949), 403 Ill. 312, 314-15; *Stromsen v. Stromsen* (1947), 397 Ill. 260, 262; *Spina v. Spina* (1939), 372 Ill. 50, 56; *United States v. Trilling* (7th Cir. 1964),

328 F.2d 699, 701.) The burden is upon one questioning the gift to overcome the presumption by clear, convincing, unequivocal and unmistakable evidence. *Suwalski v. Suwalski* (1968), 40 Ill. 2d 492; *Wright v. Wright* (1954), 2 Ill. 2d 246; *Paluszek v. Wohlrab* (1953), 1 Ill. 2d 363; *Jones v. Koepke* (1944), 387 Ill. 97.

In the present case the trial court ruled that there was insufficient evidence to rebut the presumption of a gift to Mrs. Wilson. However, the appellate court disagreed, based on the holding in *Ludwig v. Ludwig* (1952), 413 Ill. 44. In *Ludwig,* the husband purchased a house with his own funds, but title was taken in the names of the husband and wife jointly. The attorney explained to the parties at the time of the conveyance that title was taken in that manner for convenience so as to avoid the expense of probate in case either party died. The wife subsequently abandoned her husband, was divorced, and remarried. She stated she had no interest in the property. The husband kept up the property and paid the taxes. On these facts, this court held there was a sufficient showing of intent to rebut the presumption of gift and a resulting trust was implied in favor of the husband. The facts in the present case differ from *Ludwig,* as will be apparent from the discussion below, and thus we do not find it controlling.

Intention is the key to the doctrine of resulting trust. We are asked by Mr. Wilson to hold that under the law of this State his intent to retain the present equitable interest in the property should be enforced, but that his intent to give his wife a right to survivorship should be ignored. The question is whether Mr. Wilson will be permitted to avoid the consequences of his stipulated intent; that is, the intent to create rights of survivorship by placing title to the property in joint tenancy. In construing the apparently conflicting stipulated intentions of Mr. Wilson, we find *Cook v. Patrick* (1891), 135 Ill. 499, helpful. In that case the doctrine of resulting trust was explained as a creature

of equity founded upon presumptive intention, and designed to carry that intention into effect. The court went on to hold that a resulting trust may exist as to a part of the property, or a part of the interest therein, according to the intent existing in each particular case. Thus, if the appropriate intent is present, a resulting trust may be rebutted as to a part of the interest in the property. The court, citing cases from other jurisdictions and authorities in the field of equity, stated:

"[A] resulting trust may be rebutted as to part of the land comprised in a deed and prevail as to the remainder; and if it can be rebutted as to a part of the land, there can be no reason why it may not be rebutted as to a part of the interest in the land." (*Cook v. Patrick* (1891), 135 Ill. 499, 508.)

In *Cook v. Patrick,* the court held that W. L. Stevenson, who purchased real estate with his own money and took title in the name of people by the name of Patrick, was the beneficiary of a resulting trust for life because the intention was clearly expressed when title was taken that he wanted to reserve to himself a life estate in the equitable interest in the realty and that, after his death, the equitable interest, as well as the legal title, would vest in the Patricks. For text discussion of resulting trusts in less than all of the property, or in only a limited interest in the property, see 5 A. Scott, Trusts sec. 454.4, at 3382 (3d ed. 1967); G. Bogert, Trusts and Trustees sec. 454, at 637; sec. 462, at 750-56 (2d ed. rev. 1977).

In *Gillespie v. Gillespie* (Mo. 1926), 289 S.W. 579, 580, the husband had purchased real estate and had his wife, Ellen, named as grantee in the deed. When he delivered the deed to his wife, he stated, "Here, Ellen, this is yours. I want it to be yours at my death." Thereafter, the taxes were assessed in the name of the husband and paid by him. He rented the property to others and col-

lected the rent. He made repairs to the property and generally exercised control over it. The court stated:

"We think from the acts and expressed intention of Mr. Gillespie at the time in taking title in the name of his wife, but retaining the management and use of the property as has been mentioned, a trust in his favor could be implied, extending, however, only to a life interest, but that the interest in remainder was intended at the time to pass, and did pass, to the plaintiff." (*Gillespie v. Gillespie* (Mo. 1926), 289 S.W. 579, 582.)

To the same effect, see *Casa Colina Convalescent Home For Crippled Children, Inc. v. Wiest* (1963), 214 Cal. App. 2d 161, 29 Cal. Rptr. 407.

The above cases did not involve title to property held in joint tenancy. However, in *Rowland v. Clark* (1949), 91 Cal. App. 2d 880, 206 P.2d 59, the court applied the same reasoning as did the courts in the above cases in implying a resulting trust for life in real estate, title to which had been taken in joint tenancy. In that case the defendant grandmother assumed the responsibility for the care and education of her granddaughter, the plaintiff. The defendant purchased property and had title placed in her name and the plaintiff's name as joint tenants. At the trial the defendant testified, "I told her I would put her name on the deed so she could get the property at my death; it would be hers." (*Rowland v. Clark* (1949), 91 Cal. App. 2d 880, 882, 206 P.2d 59, 60.) The court implied a resulting trust in the property in favor of the defendant grandmother for her life. The court stated:

"While in the instant case the title to the property involved was not taken in plaintiff's name alone, we are of the opinion that the principle of a resulting trust applies to the title acquired by plaintiff insofar as the life estate in the defendant is concerned." (*Rowland v. Clark* (1949), 91 Cal.

App. 2d 880, 884, 206 P.2d 59, 61.)

Applying the reasoning of the above authorities, we will give effect to the stipulated intent of Mr. Wilson at the time of the acquisition of the property in question and imply a resulting trust in the property in his favor to the extent of a life interest only.

It is apparent from the stipulation that the presumptive gift to Mrs. Wilson has been rebutted, but only in part. It is also clear that the intent was that Mr. Wilson was to have the use and benefit of the property during his lifetime. This intent was corroborated by the conduct of Mr. and Mrs. Wilson with regard to the property; that is, the husband retained the management, use and control of it. Thus, to give effect to this intent, a resulting trust will be implied in favor of Mr. Wilson. However, the express intent goes no further than that Mr. Wilson shall have the beneficial interest in the resulting trust for life. Mrs. Wilson therefore was the trustee of the resulting trust during her life for the benefit of Mr. Wilson as to the interest she held as a joint tenant. There was a clear expression of intent that the resulting trust should not be in the entire estate or interest in the property. The stipulation states that Mrs. Wilson was to have a right of survivorship, which diminishes the beneficial interest of Mr. Wilson in the resulting trust. Historically, the right of survivorship is an incident of and arises out of joint tenancy. (*Kane v. Johnson* (1947), 397 Ill. 112; *Gaunt v. Stevens* (1909), 241 Ill. 542.) Had Mr. Wilson died first, Mrs. Wilson would have become vested with title in fee to the property, and the resulting trust would have automatically terminated. Therefore, on the death of Mr. Wilson, his equitable interest in the resulting trust would terminate and the entire title, both legal and equitable, would vest in Mrs. Wilson. No beneficial interest would have passed to his estate.

The next question is whether the interest held by Mrs.

Wilson in the property at her death was sufficient to be taxed under the Illinois inheritance and transfer tax statute.

The State argues that, for inheritance tax purposes, the courts, in taxing joint tenancy property, are not permitted to look to the intent of the parties involved or to their contribution. Section 1(5) of the inheritance and transfer tax statute (Ill. Rev. Stat. 1973, ch. 120, par. 375(5)) provides:

"5. Whenever property, real, personal, or mixed, is held in the joint names of 2 or more persons, or is deposited in banks or other institutions or depositories in the joint names of 2 or more persons, and payable to either or the survivor, upon the death of one of such persons, the right of the surviving joint tenant or joint tenants, person or persons, to the immediate ownership or possession and enjoyment of such property shall be deemed a transfer taxable under the provisions of this Act in the same manner as though a fractional part of the property to be determined by dividing the value of the entire property by the number of joint tenants, joint depositors or persons belonged absolutely to the deceased joint tenant, joint depositor or person and had been devised or bequeathed to the surviving joint tenant or joint tenants, person or persons, by such deceased joint tenant or joint depositor by will."

The State's argument is based upon the history of section 1(5). In *People v. Varel* (1932), 351 Ill. 96, this court held that it was appropriate to look to the contributions of joint tenants in imposing the inheritance tax. Paragraph 5 of section 1 then provided that jointly held personal property was to be taxed in the estate of the decedent "as though the whole property to which such transfers relates was owned by said parties as tenants in common ***." (Smith-Hurd Rev. Stat. 1927, ch. 120, par. 375(5).) Thus, where parties held property as tenants in common and their contributions to the purchase price were unequal, they were generally held to own on the basis

of the contribution. The *Varel* court, relying upon the express language of the inheritance tax law, permitted the trial court to determine the amount of each party's contribution and impose the inheritance tax accordingly. However, the court in *Varel* suggested that if the legislature had intended to tax on the basis of the full value of the property passing to the survivor, it should have used apt and unmistakable language to express that intent.

The following year, the legislature acted on the court's suggestion in *Varel* by amending the act to tax joint tenancy property on a fractional-interest basis—the denominator to be determined by ascertaining the number of joint tenants. (*In re Estate of Arundale* (1972), 51 Ill. 2d 311.) In *Arundale,* this court held that when property is held in joint tenancy, it is irrelevant how much each tenant contributed for inheritance tax purposes. However, in the present case we are not considering contribution for tax purposes, but rather to determine the type of property interests held by the parties. Before a tax can be imposed there must first be a taxable interest or event.

An inheritance tax is designed to tax the privilege of succeeding to property rights of deceased persons and is imposed upon the economic benefit gained thereby. In determining whether the government may impose an inheritance tax on a property interest at death, it must be shown that the death has brought into being, or ripened, for the survivor, property rights of such a character as to make appropriate the imposition of a tax upon that result. As stated in *Tyler v. United States* (1930), 281 U.S. 497, 502, 74 L. Ed. 991, 998, 50 S. Ct. 356, 358:

> "Death duties rest upon the principle that death is the 'generating source' from which the authority to impose such taxes takes its being, and 'it is the power to transmit or the transmission or receipt of property by death which is the subject

levied upon by all death duties.' "

One need not own or possess or receive a beneficial interest in the conventional use of the term. It is not the beneficial interest or even the acquisition of such an interest which is the occasion for the tax. Relevant to defining the nature of the taxable event or interest when property passes by the right of survivorship is the following language of the Supreme Court in *Tyler v. United States* (1930), 281 U.S. 497, 503, 74 L. Ed. 991, 998, 50 S. Ct. 356, 359:

> "The question here, then, is, not whether there has been, in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result *** to be measured, in whole or in part, by the value of such rights."

Mrs. Wilson possessed the right of survivorship in the stock and the checking account so that Mr. Wilson risked losing the entire interest in this property by predeceasing his wife. This risk was only extinguished at Mrs. Wilson's death, when Mr. Wilson became the sole owner of the property. Although Mr. Wilson, by virtue of a resulting trust, had a beneficial interest in the property during his life, prior to his wife's death he had no right to dispose of his interest by will, nor could it pass to his legal heirs. Mrs. Wilson might have survived and thereby obtained a complete fee to the property with attendant rights of possession and disposition by will or otherwise. There was at her death a distinct enlargement of Mr. Wilson's interest in the property, a decided change in his favor as the surviving joint tenant, since his interest in the property was no longer encumbered by his wife's. The death of one of the parties to the tenancy, Mrs. Wilson, became the " 'gen-

erating source' of important and definite accessions to the property rights of the other." (*Tyler v. United States* (1930), 281 U.S. 497, 504, 74 L. Ed. 991, 999, 50 S. Ct. 356, 359.) The Illinois inheritance tax is validly imposed on this event and enlargement of economic interest.

Under the stipulated facts of this case we have given effect to the manifest intent of Mr. Wilson and under the circumstances find that he was the recipient of a taxable interest in property under section 1(5) of the Illinois inheritance and transfer taxes law on the death of his wife. The judgment of the appellate court is reversed and the cause remanded to the circuit court of Adams County.

*Appellate court reversed;*
*cause remanded.*