In re Dennis WATKINS, Debtor.

Richard W. Roeder, Esq.,
Trustee, Plaintiff

v.

Thomas J. Carr and Cheers
Pub, Inc., Defendants

Richard W. Roeder, Esq.,
Trustee, Plaintiff

v.

Thomas J. Carr and Cheers
Pub, Inc., Defendants.

Bankruptcy No. 06–10759.
Adversary Nos. 07–1052, 08–1025.

United States Bankruptcy Court,
W.D. Pennsylvania.

Aug. 6, 2008.

174

Jennifer L. Jones, Roeder & Jones, Titusville, PA, for Plaintiff.

Richard W. Roeder, Titusville, PA, pro se.

Daniel J. Brabender, Jr., Carney & Good, Erie, PA, for Defendants.

### MEMORANDUM

WARREN W. BENTZ, Bankruptcy Judge.

### A. Introduction.

Dennis Watkins ("Watkins" or "Debtor") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on July 6, 2006 ("Filing Date"). Richard W. Roeder, Esq. ("Trustee") serves as Chapter 7 Trustee.

The Trustee has filed two separate Complaints against Thomas J. Carr ("Carr") and Cheers Pub, Inc. ("Cheers") or ("Cheers" and "Carr", collectively the "Defendants"). At Adversary No. 08–1025 the Trustee, in its Amended Complaint, seeks to avoid as a preference under 11 U.S.C. § 547, certain judgments in favor of the Defendants and against Watkins and Denny's Bar and Banquet, Inc. ("Denny's"). Denny's is a separate corporation, 100% of the stock of which is owned by Evelyn Watkins ("Evelyn"), Debtor's mother. Watkins served as President and Treasurer of Denny's while Evelyn served as Vice President and Secretary. The extent of Evelyn's participation and the equitable ownership of Denny's is in dispute. The Trustee asserts that Evelyn served only as a straw person and that Watkins is the equitable owner of the stock of Denny's while the Defendants assert that Evelyn was actively involved and provided funds to consummate the purchase.

The Trustee further seeks, by Amended Complaint at Adversary No. 07–1052, to avoid certain transfers by Debtor and Denny's to Carr and Cheers as fraudulent transfers under 11 U.S.C § 548.

Defendants have filed an Answer to the Amended Complaint at Adversary No. 07–1052 and a Motion to Dismiss the Amended Complaint at Adversary No. 08–1025.

### B. Undisputed Facts.

Cheers operated a tavern and restaurant business and owned certain equipment, furniture, fixtures and intangibles in connection with its operation. Carr owned the real property at 10004 Route 98, Edinboro, Pennsylvania (the "Real Property") utilized by Cheers for the operation of the business.

In February 2005, an Asset Purchase Agreement (the "Agreement") was executed between Cheers and Carr as sellers and Watkins and Denny's as buyers. The Agreement was executed by Watkins and Carr individually, and by Carr as President of Cheers and by Watkins as President of Denny's.

Denny's agreed to purchase the assets of Cheers for $200,000, allocated as $150,000 for equipment and machinery, $40,000 for the liquor license and $10,000 for a non-compete agreement (the "Personal Property"). Watkins agreed to purchase the Real Property from Carr for $250,000.

At the closing, Denny's and Watkins were to pay the total purchase price of $450,000 to Cheers and Carr.

The Agreement provides for payment as follows:

176

(a) [Denny's] to Cheers Pub, Inc. for the Assets as follows:

(i) $50,000.00 deposit to Cheers Pub, Inc. (paid by Watkins to Carr on August 31, 2004, via check # 9749).

(ii) $50,000.00 cash at closing paid to Cheers Pub, Inc.

(iii) Note from Watkins to Cheers Pub, Inc. in the amount of $50,000.00 in a form similar to that attached hereto as Exhibit "D," which Note shall be amortized over a six (6) month period at the rate of seven percent (7%) per annum with a lump sum payment at the end of six (6) months.

(b) Watkins to Carr for the Property:

(i) Note from Watkins to Cheers Pub, Inc. in the amount of $300,000.00 in a form similar to that attached hereto as Exhibit "D," which Note shall be amortized over a ten (10) year period at the rate of seven percent (7%) per annum.

On June 6, 2005, a deed transferring ownership of the Real Property from Carr to Watkins was recorded. On June 2, 2005, Debtor executed an Installment Judgment Note in the amount of $250,000 payable by Debtor to Carr.

Debtor gave three mortgages on the Real Property, all payable to Cheers, which were recorded on June 6, 2005. The recorded mortgages are in the amounts of $250,000, $50,000 and $50,000. In connection with the two $50,000 mortgages from Watkins, Denny's executed Installment Judgment Notes payable by Denny's to Cheers.

On April 21, 2006, a confessed judgment was entered against Denny's in favor of Cheers in the amount of $60,553.50. Also on April 28, 2006, a second confessed judgment was entered against Denny's in favor of Cheers in the amount of $55,845.31.

On June 16, 2006, twenty (20) days prior to the bankruptcy filing, Watkins executed a quit claim deed (in lieu of foreclosure) for the Real Property to Carr. At that same time, the Personal Property that was purchased from Cheers was transferred back to Cheers.[1]

### C. Positions of the Parties.

#### 1. Real Property.

The Trustee asserts that the Real Property, valued by the parties at $250,000 was unencumbered because the mortgage was given to Cheers and not to Carr, and the $250,000 mortgage was not supported by a note payable to Cheers. The Trustee posits that the deed in lieu of foreclosure was given to Carr and not the Mortgagee, Cheers, and therefore was without consideration.

The Defendants respond that there were three separate mortgages from Watkins to Cheers; that the Real Property is therefore encumbered; and Cheers has a security interest in the Real Property that is superior to any interest of the Trustee.

The Defendants further posit that the April 27, 2006 judgment lien in the amount of $276,617.48 encumbers the Real Property and gives Carr a security interest superior to any interest of the Trustee. Defendants further posit that the consideration for the deed in lieu of foreclosure was the consideration of $1 noted on the instrument itself; and that since Carr was the 100% stockholder of Cheers, Carr was entitled to state such grantee on the deed as he saw fit.

#### 2. Personal Property.

The Trustee asserts that Evelyn acted solely as a straw party for the Debtor; that all funds used to purchase the Person-

1. The Trustee posits that Watkins returned the Personal Property to Carr and Cheers. The Defendants posit that Denny's, a non-debtor, transferred the personal property to Cheers.

al Property belonged to the Debtor; that Evelyn held the shares of Denny's and applied for a liquor license solely as an accommodation to the Debtor; that the Debtor was the equitable owner of Denny's; that Evelyn had no equity or beneficial interest in the Personal Property and held legal title only by reason of a resulting trust; that when Evelyn cooperated in the transfer of the liquor license from Denny's back to Carr or Cheers, she was acting on behalf of the Debtor; and that since there was no filing under the Uniform Commercial Code, the Personal Property was unencumbered.

The Defendants deny that Evelyn acted as a straw person; that it was the Debtor, Evelyn, and the corporation Denny's, that provided financing for the purchases; that there are no equitable owners of Denny's; that Denny's was the applicant for the liquor license; and that any transfers from Evelyn or Denny's to Carr and/or Cheers are immaterial as transfers made by these entities are irrelevant as they are not debtors and not the subject of this bankruptcy.

### D. *Motion to Dismiss.*

The Defendants have filed a Motion to Dismiss for lack of subject matter and for lack of personal jurisdiction; to strike the Amended Complaint at Adversary No. 08–1025 as "Redundant and Scandalous"; and to dismiss for failure to state a claim for which relief can be granted.

■■■ Bankruptcy Courts have jurisdiction over "civil proceedings arising under Title 11, or arising in or related to cases under Title 11." 28 U.S.C. § 1334(b); 28 U.S.C. § 157(a), (b).

> A dispute is "related to" a case under title 11 when its result " 'could conceivably' " have an " 'effect on the estate being administered in bankruptcy.' " *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir.1990) (quoting *Pacor, Inc. v. Hig-*

*gins,* 743 F.2d 984, 994 (3rd Cir.1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 129, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995)). The " 'proceeding need not necessarily be against the debtor or against the debtor's property,' " if it could affect the administration of the bankruptcy estate *Id.* (quoting *Pacor, Inc.,* 743 F.2d at 994); *see also Celotex Corp. v. Edwards,* 514 U.S. 300, 307 n. 5, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) ("Proceedings 'related to' the bankruptcy include ... suits between third parties which have an effect on the bankruptcy estate"). "The key word in the *Lemco Gypsum/Pacor* test is 'conceivable,' which makes the jurisdictional grant extremely broad." *Cont'l Nat'l Bank of Miami v. Sanchez (In re Toledo),* 170 F.3d 1340, 1345 (11th Cir.1999). As the Supreme Court recognized in *Celotex Corp.,* " 'Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate.' " 514 U.S. at 308, 115 S.Ct. 1493 (quoting *Pacor, Inc.,* 743 F.2d at 994).

*In re Ryan,* NO. 07–10845, 2008 WL 1969593 (11th Cir. May 8, 2008).

■■■ There can be no question that the outcome of this proceeding "could conceivably" have an effect on the bankruptcy estate. Accordingly, the Court has subject matter jurisdiction.

■■■ We next address the Defendants' assertion that we lack personal jurisdiction. The Defendants were served with process by first class mail pursuant to Fed. R. Bankr.P. 7004(b) and (d), which authorize nationwide service of process in bankruptcy cases and adversary proceedings.

If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service in accordance with this rule or the subdivisions of Rule 4 F.R.Civ.P. made applicable by these rules is effective to establish personal jurisdiction over the person of any defendant with respect to a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code.

Thus, under Rule 7004(f), a court has personal jurisdiction over a defendant if three requirements are met: (1) service of process has been made in accordance with Rule 7004 of the Federal Rules of Bankruptcy Procedure or Fed.R.Civ.P. 4; (2) the action is "a case under the Code or a civil proceeding arising under the Code, or arising in or related to a case under the Code"; and (3) "exercise of jurisdiction is consistent with the Constitution and the laws of the United States."

*In re Tipton*, 257 B.R. 865, 870 (Bankr. E.D.Tenn., 2000).

All of the requirements for personal jurisdiction are easily met.

Some of the allegations of the Amended Complaint at Adversary No. 08–1025 are duplicative of those at Adversary No. 07–1052. The Trustee should have consolidated all of the issues into one proceeding, but we accept the Trustee's explanation that the second Complaint was necessary to include causes of action left out of the original Complaint. We will not dismiss the Amended Complaint as "Redundant and Scandalous."

Finally, we find that the Allegations of the Complaint, if proven, are sufficient to state a cause of action.

The Motion to Dismiss will be REFUSED.

## E.  Discussion.

### 1.  Real Property.

The Trustee attacks the transfer of the Real Property, being the real estate on which Denny's was located; the owner of the Real Property was Watkins, personally. The Trustee attacks the transfer of the Real Property on the basis that it was owned by Watkins and subject to a mortgage in favor of Cheers. Watkins conveyed the Real Property by deed in lieu of foreclosure to Carr. The mortgage was, in fact, held by Cheers. The Trustee asserts that since Carr was not the mortgage holder, then the transfer of the title to him by the Debtor was a transfer without consideration, or a preference.

However, it would appear from the pleadings that the $250,000 mortgage in favor of Cheers remains in full force and effect on the record. It would seem that if the mortgage in favor of Cheers remains valid, then any resale of the property would entail the requirement that the Cheers lien be paid or satisfied or record. We presume also that the Cheers mortgage may be assigned and/or enforced by foreclosure.

Once Watkins filed for bankruptcy, the Trustee is provided the rights of a hypothetical bona fide purchaser as set forth in 11 U.S.C. § 544(a)(3). *In re Speer*, 328 B.R. 699 (Bankr.W.D.Pa.2005):

As a hypothetical purchaser, the trustee would be deemed to have conducted a title search of the property, paid value for the property, and perfected his/her interest as of the date of commencement of the case. *In re Sosnowski*, 314 B.R. 23 (Bankr.D.Del.2004).

*In re Speer* at 703.

The recording of the three mortgages alone, in favor of Cheers, provides constructive notice that mortgages in the

Real Property have been granted to Cheers. *In re Haburjak,* 309 B.R. 170 (Bankr.W.D.Pa.2004).

The Cheers' mortgages effectively encumber the Real Property. Since the Trustee had constructive notice of the mortgages, the Trustee cannot avoid the mortgages pursuant to 11 U.S.C. § 544(a). Thus, it would appear that the Trustee has no cause of action relative to the Real Property.

### 2. *Personal Property.*

The Trustee also attacks the transfer of the Personal Property of the bar and restaurant facility. The claim for the Personal Property raises a different issue. Watkins organized Denny's to acquire the Personal Property on the premises, including the liquor license, and to run the food and drink business. The Corporation was the obligor on the final purchase debt. Evelyn, Watkins' mother, was the owner of the stock and allegedly the person in control of the corporation. We understand that there was no security interest found in the records by which Cheers could have or would have a security interest in the personal property. When the Debtor and the corporation were unable to pay, the persons in charge of Denny's cooperated in giving back to Cheers the Personal Property which it had acquired from Cheers. It would appear that certain of the cooperation was, or may have been, because Cheers had entered judgment on the obligation and had commenced execution proceedings through the sheriff.

The Trustee claims that Evelyn was a straw party holding the ownership and control of Denny's in a resulting trust for the benefit of her son, the Debtor. The Defendants assert that Denny's is a separate entity, that it is not in bankruptcy, and that its assets or the assets which it transferred, cannot be brought into the bankruptcy estate. The Trustee argues that before the transfer of the Personal Property back to the vendor, Denny's was the owner of those assets free and clear of any liens, that the value of those assets was in the stock of the corporation; that when the assets were given back to the vendor, such action depleted the value of the stock in the hands of the mother, who was holding same as a straw party solely for the benefit of the Debtor, her son, Watkins.

A resulting trust "is based upon the 'natural equity' that one who pays for property should enjoy it." *In re Estate of Koch,* 297 Ill.App.3d 786, 232 Ill.Dec. 189, 697 N.E.2d 931, 933 (1998). A resulting trust is an "intent enforcing trust" which arises from the presumed intent of the parties. *In re Estate of Wilson,* 81 Ill.2d 349, 43 Ill.Dec. 23, 410 N.E.2d 23, 26 (1980). "A resulting trust, unlike a constructive trust, seeks to carry out a donative intent rather than to thwart an unjust scheme. The general rule is that where a transfer of property is made to one person and the purchase price is paid by another, a resulting trust arises in favor of the person by whom the purchase price is paid." *In re Crossroad Health Ministry, Inc.,* 319 B.R. 778, 780 (Bankr.D.D.C.2005) (Citing Collier on Bankruptcy ¶ 541, 11[3] at 541–67 (15th ed. Rev.2003); *United States v. Marx,* 844 F.2d 1303, 1309 (7th Cir.1988) (citations omitted)).

*In re Berg,* 387 B.R. 524, 550 (Bankr. N.D.Ill.2008).

The Trustee's claim for the Personal Property is based on the assertion that it was the Debtor's money that was used to purchase the Personal Property; that the Debtor was always the 100% owner of the Personal Property; that Evelyn acted solely as a straw party; that the Debtor had full legal control and owner-

ship of the Personal Property; and accordingly, the Personal Property is part of the Debtor's bankruptcy estate.

The parties disagree over Evelyn's contributions toward the purchase. If Evelyn acted solely as a straw party for the Debtor, such that Debtor is the beneficial owner of property held by Evelyn in a resulting trust, then the Personal Property would be property of the estate and since Cheers failed to make the appropriate UCC filings, would be free of any liens. If the Personal Property in fact belonged to the Debtor, it appears that the judgment against Denny's was entered during the preference period and is subject to avoidance.

The relevant facts are in dispute and the issue cannot be resolved at this time. The Trustee bears the burden of proving that it was Debtor's funds that were used to fund the purchase and that Evelyn acted solely as a straw party, holding the property in a resulting trust with the Debtor as beneficiary. *In re Berg*, 387 B.R. at 553.