**Raffaele BRANCA, Defendant Below, Appellant,**

**v.**

**Lorenzo BRANCA and Domenica Branca, his wife, Plaintiffs Below, Appellees, Cross-Appellants.**

**and**

**Maria Branca a/k/a Maria Volpe, Defendant Below, Appellee.**

Supreme Court of Delaware.

Submitted Sept. 21, 1981.

Decided March 17, 1982.

Thomas Herlihy, III (argued) of Herlihy & Herlihy, Wilmington, for appellant, Raffaele Branca.

John A. Faraone (argued) Wilmington, for appellees, cross-appellants, Lorenzo and Domenica Branca.

Lawrence F. Hartnett (argued) Wilmington, for appellee Maria Branca/Volpe.

Before HERRMANN, C. J., and DUFFY and HORSEY, JJ.

PER CURIAM:

This appeal concerns whether lenders (parents) should be granted an equitable lien upon real estate purchased by borrower (their son) for the amount of their otherwise unsecured loan after the real estate was placed in joint names with his spouse-to-be.

The lending parents (plaintiffs) appeal the Court of Chancery's denial to them of any relief (legal or equitable) against their son's former wife, Maria (defendant), concerning a transaction found by the Court to have been a loan, not a gift, by the parents but to have been made solely to their son, Raffaele.[1]

The Court found the parents had furnished the *entire* consideration ($35,000) for the real estate purchase and that the purpose of the loan had been to enable their son and Maria, his bride-to-be, to have their own home upon their marriage. The Court thereby rejected Maria's contention that the money represented a gift from Raffaele's parents. But, as stated, the Court also rejected the parents' contention that their loan had been made to Maria as well as Raffaele. The Court did so because, in its words, the evidence was insufficient to find Maria to have been "a party to any repayment agreement."

The Court then found that Raffaele, by directing that the deed to be delivered at settlement "show both himself and [Maria], his intended wife, as the grantees . . . , thereby made a gift to Maria of a one-half interest in the house." And the Court concluded that the evidence was insufficient to show that Maria thereafter "ever entered into any legally binding agreement to subject her half interest in the property to an equitable lien or a constructive trust." The Court also rejected the plaintiff-parents' alternative contentions that either an agency relationship existed between Maria and Raffaele or that a confidential relationship existed between Maria and plaintiffs—as not established by the evidence.

On the above findings, the Vice Chancellor ruled that no equitable lien, by way of either a resulting or a constructive trust, could be impressed on the real estate as security for the parents' loan; and that plaintiffs were only entitled to a judgment of $35,000 against their son—upon his failure to repay the loan following the breakup of the marriage three years later.

The appeal is from the Court's final order directing the real estate to be sold with the net proceeds distributed one-half to plaintiffs and the other half to Maria, subject to a minor offset.

The Vice Chancellor recognized that much of the testimony (of which all from plaintiffs was introduced through an interpreter) "might adduce sympathy for the plaintiffs."[2] However, he concluded, wrongly we think, that it "was totally irrelevant to the legal issues in [the] case." We think the Court thereby failed properly to

---

1. Raffaele (also a named defendant) joins in the appeal but only from that portion of the Court's ruling that was favorable to his former wife, Maria. Raffaele does not contest the Vice Chancellor's ruling granting his parents a judgment against him for $35,000, the amount of the loan.

2. Plaintiffs could neither speak, read nor write English. They were native-born Italians who, in mid-life, had migrated to this country some 10 years earlier. Husband had a minimal for-

mal education; was a gardener by trade; but was permanently disabled and no longer employable. Plaintiffs' only source of income was from workmen's compensation and social security benefits. Their son, Raffaele, was born in Italy, had a fifth grade education, had come to this country 10 years earlier and spoke English with difficulty. Inflicted with infantile paralysis, he too was a gardener by trade and had a limited monthly salary.

apply equitable principles in a familial factual setting which quite clearly called for equitable relief—to prevent unjust enrichment.

Accepting the Vice Chancellor's findings of fact, we conclude that plaintiffs were entitled, as a matter of law, to have an equitable lien impressed upon the real estate, including Maria Volpe's interest therein—to reflect plaintiffs' $35,000 investment therein—a sum which was established to have represented plaintiffs' life savings.

■ While in the usual case an equitable lien is impressed to reflect an express agreement that the property to be liened was intended to be held as security for the obligation of the promisor, *Acacia Mutual Life Insurance Co. v. Newcomb*, Del.Ch., 21 A.2d 723 (1941), a lien may also be impressed out of recognition of general equitable principles of right and justice. *Acacia v. Newcomb, supra; accord, Tucker v. Prevatt Builders, Inc.*, Fla.Ct.App., 116 So.2d 437 (1959); *Sentel v. James*, Ill.Ct.App., 16 Ill.App.2d 373, 148 N.E.2d 22 (1958); *Fulp v. Fulp*, N.C.Supr., 264 N.C. 20, 140 S.E.2d 708 (1965).

■ A principal reason for impressing an equitable lien is to prevent unjust enrichment, i.e., where it would be contrary to equity and good conscience for an individual to retain a property interest acquired at the expense of another. *Sherman v. Rhode Island Hospital Trust Co.*, R.I.Supr., 68 R.I. 625, 30 A.2d 498 (1943); *Glens Falls Indemnity Co. v. Golden*, D.D.C., 148 F.Supp. 41 (1957).

■ Applying these equitable principles to the facts of this case, we conclude: (a) that the $35,000 delivered by plaintiffs at settlement was thereby impressed with an equitable lien to reflect its being a loan rather than a gift; (b) that the lien was then transferred to the real estate purchased with the loan money; and (c) that the lien was not dissolved by Raffaele's decision to put Maria's name on the deed—even assuming that a gift was thereby intended; in other words, a subsequent gift could not destroy the lien.

This result becomes even more compelling in light of the following additional facts of record: (a) that Maria was aware of, and present during, at least some of Raffaele's discussion with his parents of Maria and Raffaele's desire to purchase a house and *their* inability to secure necessary bank financing; (b) that Maria expended no funds of her own in the purchase of the real estate, though she had at the time about $4,000 in a bank account; and (c) that Raffaele's father, though unable to speak, read or write English, was permitted to attend settlement unrepresented and to deliver checks totaling $35,000 to defendants' attorney without apparently any effort being made to explain to him the significance of his actions or to determine whether the transaction was being carried out in accordance with his intentions.

The imposition of an equitable lien against Maria's interest in the real estate is not defeated by the fact that Maria was not a party to the loan repayment agreement reached between Raffaele and his parents. *Sherman v. Rhode Island Trust Co., supra.* There, an equitable lien was affirmed against an unknowing spouse's interest in real estate, simply on the grounds of unjust enrichment. *Accord, Glens Falls Indemnity Co. v. Golden, supra*; and *Merchants Mutual Insurance Co. v. Newport Hospital*, R.I. Supr., 108 R.I. 86, 272 A.2d 329 (1971).

REVERSED and REMANDED to the Court of Chancery for entry of judgment consistent herewith.