**In re Jon B. POTEAT and Susan A.Q. Poteat, Debtors.**

**Bankruptcy No. 94–345.**

United States Bankruptcy Court, D. Delaware.

Jan. 19, 1995.

E. Scott Bradley, Young, Conaway, Stargatt & Taylor, Georgetown, DE, for Mellon Bank (DE) National Ass'n.

Michael B. Joseph, Ferry, Joseph and Fink, P.A., Wilmington, DE, Trustee in Bankruptcy.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

### INTRODUCTION

Before the court is the objection of the Trustee, Michael B. Joseph, Esquire, to the claim of Mellon Bank (DE) National Association ("Mellon"). Mellon asserts that it has a secured claim in the amount of $20,290.23, the security being a mortgage on certain real

property owned by Jon B. and Susan A.Q. Poteat ("the Debtors"). The Trustee objects to Mellon's secured status on the grounds that the property description in the mortgage is not legally sufficient. For reasons set forth below, I find that Mellon's mortgage is not enforceable as to the Trustee and Mellon is therefore an unsecured creditor.

## FACTS

The relevant facts are undisputed. By a deed dated November 18, 1980, the Debtors acquired a parcel of land known as Lot No. 32 in Hidden Acres Subdivision, Baltimore Hundred, Sussex County, Delaware. By a deed dated January 19, 1984, the Debtors acquired two more parcels of land, Lot Nos. 31 and 33, in the Hidden Acres Subdivision. Mellon loaned the Debtors $25,000.00 on March 13, 1987. The loan is evidenced by a note and security agreement of that date (the "Note"). Also on that date the Debtors executed a security agreement and residential property mortgage ("the Mortgage") in favor of Mellon.

The Debtors' property is identified in the Mortgage only as "all that certain property situated in Town of Frankford, Sussex County, Delaware, and more particularly described in Exhibit 'A', attached hereto and made a part hereof." Exhibit "A" is a copy of the first page of the January 19, 1984 deed whereby the Debtors acquired Lot Nos. 31 and 33 in Hidden Acres. The first page of that deed sets forth a complete description of those two parcels. The mortgage was recorded in the Recorder of Deeds Office in Sussex County, Delaware on September 23, 1987, but, in error, Exhibit "A" was not attached as a part of the recorded mortgage.[1]

The Debtors filed a voluntary petition under Chapter 7 of the Bankruptcy Code on April 11, 1994. As of the petition date, the records of the Sussex County Tax Assessment Office show the Debtors owning Lot Nos. 31, 32 and 33 in Hidden Acres. On April 22, 1994 Mellon re-recorded the Mortgage in the Recorder of Deeds Office in Sussex County, Delaware, attaching thereto the Exhibit "A" property description. Thereafter Mellon filed its proof of claim.

## DISCUSSION

The Trustee brings this action under his strong-arm powers pursuant to 11 U.S.C. § 544(a)(3).[2] He argues that the property description in the mortgage is so deficient that the mortgage is unenforceable as to him, a deemed bona fide purchaser of the property. Mellon asserts that the property description in the mortgage is legally sufficient because "the property encumbered by the mortgage is described generally and can be described more particularly by referring to readily available extrinsic evidence." (Mellon Br. 4.) More specifically, Mellon asserts that the Trustee can look beyond the general property description in the mortgage record to the records in the Sussex County Tax Assessment Office for a specific description of the property. Mellon posits that such action would eventually lead to the tax map parcel numbers and the deed book and page numbers for the lots described in Exhibit "A" to the mortgage.

While a trustee's strong arm powers arise under federal law, "the scope of these avoidance powers vis-a-vis third parties is governed entirely by the substantive law of the state in which the property in question is located as of the bankruptcy petition's filing." *In re Bridge,* 18 F.3d 195, 200 (3d Cir.1994). Fortunately, the Delaware Supreme Court, in *Handler Const. v. CoreStates Bank, N.A.,* 633 A.2d 356 (Del.Supr.1993), spoke at length on the subject of mortgage recordation defi-

---

1. No explanation has been offered as to the six month delay in recording the mortgage.

2. This Section provides, in pertinent part, that
   (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor, or any obligation incurred by the debtor that is voidable by—

(3) a bona fide purchaser of real property ... from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such purchaser exists.
11 U.S.C. § 544(a)(3). Citations to 11 U.S.C. § 101 et seq. are hereinafter referred to as "Code § ____."

ciencies and has provided guidance for the court here. In *Handler Const.*, the court held that the holder of a sealed, recorded mortgage had constructive notice of a prior recorded, but unsealed, equitable mortgage on the same property, and thus, the unsealed mortgage had priority. The *Handler Const.* court set forth a detailed exposition of the long history of the distinction between enforcement of a mortgage in the law court and enforcement in the equity court. In a footnote to that discussion, the court pointed out that whether a legal or an equitable enforcement is involved, there are some types of substantive defects which render a mortgage unenforceable. In the words of the court:

> It is true that some substantive defects may render a document entirely unenforceable as a mortgage (e.g., failure to state any amount of debt, *grossly inadequate description of the premises,* or lack of acknowledgment). *See generally* 9 Thompson, *Commentaries on the Modern Law of Real Property* §§ 4662, 4664, 4669. *Cf. Wilmington Sav. Fund Soc'y v. 1025 Assocs.,* 106 B.R. 805, 810 (Bankr.D.Del. 1989). The absence of a seal, however, is not in this category. (Emphasis added.)

*Id.* at 363 n. 6 (citations omitted).

Thus, under Delaware law a grossly inadequate description of the property is a substantive defect making the instrument unenforceable. I find the property description in the Mortgage to be grossly inadequate.

■ The Mortgage only tells us what town in Sussex County the property is located. There is no metes and bounds description, no street address, no street or road name, no tax parcel number and no reference to any other recorded instrument which could provide the missing information. Mellon cites *Matter of 1025 Assocs., Inc.,* 106 B.R. 805 (Bankr.D.Del.1989), for the proposition that the court is permitted to look beyond the mortgage record to clarify the property description. (Mellon Br. 5–6.) That case, however, is distinguishable from the case *sub judice.*

The issue in *Matter of 1025 Assocs., Inc.* was whether a mortgage was invalid because the property description, although given both as a street address and in metes and bounds, omitted the city, county and state where the mortgaged premises were located. *Id.* at 809. Citing cases specific to that issue, the court found that it was proper to look within the mortgage record for indicators whereby the city, county and state could be deduced. *Id.* The court thus looked to the acknowledgment on the last page of the mortgage, which clearly stated "State of Delaware" and "New Castle County." *Id.* The court also noted that a cursory examination of a map of New Castle County, Delaware revealed that the two streets where the property was located intersected only in the city of Wilmington. Consequently, the court rejected the debtor's argument that the mortgage was unenforceable for want of a specific property description.

In the case here, however, the only description of the property is "all that certain property situated in Town of Frankford, Sussex County, Delaware; and more particularly described in Exhibit "A", attached hereto and made a part hereof." Unlike the property description in *Matter of 1025 Assocs., Inc.,* no reference is made to the street address of the property and there are no indicators within the mortgage record that would enable a bona fide purchaser to deduce where the property is located in Frankford, Delaware. In *Matter of 1025 Assocs., Inc.* the court looked beyond the mortgage record to clarify the property description. The issue in the case at bar, however, involves the Trustee's ability to find a property description, not clarify one already in the mortgage document.

■ Mellon suggests that a more particular description of the property was accessible by reference to readily available records in the Sussex County Tax Assessment Office, which "show that the Debtors own lots 31 and 33 in Frankford, Delaware, which are the two lots described on Exhibit "A" to Mellon's mortgage." (Mellon's Br. at 6.) This argument is flawed in that it presupposes the Trustee's knowledge of the contents of Exhibit "A." Code § 544(a) negates

such a supposition.[3]

■ Mellon is correct in arguing that the Trustee could have accessed records in the Sussex County Tax Assessment Office to identify the properties owned by the Debtors. However, he still would not have been able to determine the location of the specific property referred to in the Mortgage as "that certain property." The Debtors own three properties, Lot Nos. 31, 32 and 33 in Hidden Acres, Frankford, Delaware. Consequently, the Trustee would have been unable to determine whether all, two or just one of the lots were encumbered by the Mortgage. This situation renders inapplicable the case of *Wilson v. Boyce*, 92 U.S. 320, 2 Otto 321, 23 L.Ed. 608 (1875), relied upon by Mellon, where the court held that a description stating "of all my property" was sufficient.

The reasoning of the court in *Hargrave v. LaPalomento (In re LaPalomento)*, 29 B.R. 291 (Bankr.D.N.J.1983), is instructive here. *LaPalomento* involved three separate mortgages on the same property, with one of the mortgages being challenged on the ground of a defective property description. The document did not contain a metes and bounds description, a tax lot and block number, a street address or a reference to the deed covering the premises. The property was described as Pennsville–Pedricktown Road in Pennsville Township, Salem County. In fact, the property was located in Oldmans Township, Salem County, the Pennsville–Pedricktown Road is in Oldmans Township and there is no road by that name in Pennsville Township. Because two of the three mortgages contained a correct description of the property, the court found there was a duty of inquiry. Clearly, a mistake in drafting had been made. Either the street location or the municipal designation was incorrect. A reasonable inquiry would reveal to a purchaser what property in Salem County was actually deeded to the debtors. The recorded deed clearly showed that the property located on Pennsville–Pedricktown Road was in Oldmans Township. The court found that this deed was as much a part of the record, of which any purchaser would have notice, as any of the three mortgages. But, if, as is the

case here, the debtor owned other properties, a different result is suggested. The court noted:

> It is clear from the bankruptcy petition filed with this court that the debtors do not own any other real estate. Thus, there is no constructive notice that the debtors might have owned other property in Pennsville, Salem County or other property on Pennsville–Pedricktown Road in Oldmans Township. If the debtors had owned other property, pursuant to a deed which was recorded, the reasonableness of a bona fide purchaser's duty of inquiry might have been different. *The presence of another recorded deed may have made it impossible, from pursuing the records, to determine which real estate was covered by the mortgage in question here.* (Emphasis added.)

*Id.* at 295.

Because the Debtors own more than one property in Frankford, Sussex County, an examination of the public records (i.e., the two deeds and the tax records) could only disclose what property might be the subject of the Mortgage. It would be impossible to conclude from the public records what property is in fact the subject of the Mortgage. Furthermore, the Mortgage is not a purchase money mortgage. If it were a purchase money mortgage with a contemporaneously dated deed, one could argue, although not with certainty, that the Mortgage relates to the property covered by the deed of the same date. The two deeds here are dated a number of years prior to the Mortgage. Linking the Mortgage to the property in either deed is speculation. Indeed, as to the second deed an additional speculative step is called for because it covers two parcels.

Mellon relies on *In re Barnacle*, 623 A.2d 445 (R.I.Supr.1993), where the court referred to other documents recorded in the public records to identify the unit number of a condominium that was only described in the mortgage by a metes and bounds description. Mellon suggests that the Trustee "may ... do the same thing here to determine what property the Debtors own in Frankford, De-

---

**3.** See *supra* footnote 2 and accompanying text.

laware." (Mellon Br. 6). As noted above, the identities of parcels owned by the Debtors are ascertainable from the public records, but that does not tell us which of those parcels is the subject of the Mortgage. The *Barnacle* decision is easily distinguished from the instant situation. There the mortgage described the condominium property by a metes and bounds description of the condominium complex but did not identify the unit number within the complex. However, contemporaneous with the mortgage, the creditor obtained a collateral assignment of leases and rents which described the property by a metes and bounds description of the condominium complex plus the unit number within the complex. The court concluded that a clarification of the description in the mortgage was easily ascertainable from the public record.

> One searching the records would literally have the key to the specific identity of the condominium unit at his or her fingertips and could unlock the resulting information simply by turning one page in the land evidence records. The mortgage that contained the general metes-and-bounds description of the entire condominium project was recorded on page 262. The assignment was recorded on page 262A. The association of the mortgage and the assignment can be further evidenced by the fact that they were recorded two minutes apart. We believe that a reasonable and diligent title search would have uncovered the assignment. The purchaser with notice of the mortgage and the assignment would then have the identity of the specific unit number because both the general metes-and-bounds description and the specific unit number appear in the assignment. Therefore, we hold that the purchaser would have constructive notice of the single condominium unit that the mortgage covered.

*Id.* at 451–52.

As noted above, there is no such linkage here between the Mortgage and two deeds recorded years prior to the Mortgage.

While I have been unable to find any reported decisions in Delaware or neighboring jurisdictions directly on point, there is a reported Florida decision directly on point. In *Air Flow Heating and Air Conditioning, Inc. v. Baker*, 326 So.2d 449 (Fl.Dist.Ct.App. 1976), *cert. den.* 341 So.2d 289 (1976), the court found a recorded mortgage fatally flawed because the exhibit setting forth the property description was not attached. The *Air Flow* decision involved a priority dispute between a bank mortgagee and subsequent mechanics lienors. The bank lender caused the mortgage to be recorded. The mortgage described the property as: "All the land located in the County of Orange, State of Florida (the 'Land') described in Exhibit 'A' attached hereto and made a part hereof." But the Exhibit "A" was not attached to the recorded mortgage. Contractors acquired mechanics lien rights and subsequent to that the bank rerecorded the mortgage with Exhibit "A" attached. In support of its position, the bank pointed out that the first recorded mortgage contained language reflecting the existence of a loan agreement between the mortgagor and mortgagee, which loan agreement was specifically incorporated by reference into the mortgage document and which loan agreement contained and supplied the omitted legal description referred to as "Exhibit A" in the mortgage. The court acknowledged the proposition that reference may be made in a recorded document to a deed or other document for the purpose of remedying a defect or uncertainty created by the recorded instrument and a prudent person would be on notice of that remedying reference. However, the court found that there was no indication to any prudent and reasonable person that the omitted legal description was intended to be supplied by reference to some other independent document. The only place the mortgage referred to the loan agreement was in a provision dealing with a breach, which provision was set forth in the boiler-plate provisions of the recorded mortgage. Under these circumstances the court concluded that the reference in the mortgage to the loan agreement was not intended for legal description purposes.

> Conceding that the loan agreement contained a description of the mortgaged property, reference to that agreement in the recorded mortgage document in the

context described above would not create a duty upon a reasonable person to make further inquiry about the missing legal description or reasonably suggest that in order to locate such description it would be necessary to refer to the loan agreement (presumably available in the office of the mortgagee). We have not been shown nor has our research revealed any reported case in this or any other jurisdiction where a legal description of property which was omitted from a recorded mortgage could be supplied by a general reference to another document such reference being for a purpose unrelated to the legal description. It would require a strained interpretation of the recording law to sanction the imparting of notice—constructive or implied—under these circumstances.

*Id.* at 452.

Although the Mortgage here makes reference to the Note, in a provision similar to that in the mortgage in *Air Flow,* Mellon could not make the argument here that the bank made in *Air Flow* because the Note does not contain a description of the property.[4] Even if the Note contained a description of the property, I would adopt the Florida court's position that absent a clear indication that the referenced document is intended to clarify or supplement the property description in the mortgage, a prudent and reasonable person is not required to seek out and examine the referenced document.

## CONCLUSION

For the reasons set forth above, I find the property description in the Mortgage to be grossly inadequate. Under Delaware law this substantive defect renders the Mortgage unenforceable as to third parties, and consequently, the Mortgage is avoidable by the Trustee as a bona fide purchaser pursuant to Code § 544(a)(3). The Trustee's objection to the proof of claim filed by Mellon

is therefore sustained. Mellon's claim will be treated as an unsecured claim.

---

4. The Note is even less helpful than the Mortgage in describing the property. The Note's identification of the property reads: "A Mortgage dated March 13, 1987 from Jon B. and Susan A.Q. Poteat as Mortgagors to Mellon Bank (DE) National Association as Mortgagee to certain premises located in Sussex County, Delaware, as more fully set forth therein."