**In re Daniel and Catherine SOSNOWSKI, Debtors.**

**Daniel and Catherine Sosnowski, Movants,**

**v.**

**RealTime Resolutions, Inc., Respondent.**

**No. 01–11736–JKF.**

United States Bankruptcy Court, D. Delaware.

Sept. 8, 2004.

Cynthia L. Carroll, Newark, DE, for Debtors.

Michael B. Joseph, Wilmington, DE, Chapter 13 Trustee.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD, Chief Judge.

The matter before the court is Debtors' objection to a proof of claim filed on behalf of Fairbanks Capital Corporation, predecessor in interest of RealTime Resolutions, Inc.

### FACTS

In December of 1997, Debtors borrowed $50,000 from Preferred Credit Corporation pursuant to the terms of a note and mort-

---

**1.** This Memorandum Opinion constitutes the court's findings of fact and conclusions of law. The court's jurisdiction was not at issue.

gage. The 1997 loan was secured by a mortgage on the property located at 433 Boxwood Lane, Middletown, Delaware. Preferred Credit assigned the note and mortgage to Fairbanks Capital Corporation without having recorded the mortgage or assignment. Fairbanks, likewise, failed to record the mortgage. Fairbanks transferred its claim to RealTime Solutions, Inc., on August 26, 2003. RealTime is thus the current holder of the unperfected mortgage. There are two properly perfected mortgages prior in time to the disputed mortgage.

Debtors filed a Chapter 7 bankruptcy petition on December 28, 2001. Due to the absence of a mortgage recorded in favor of Fairbanks, the Trustee determined that Debtors had sufficient equity in their property to convert their case to a Chapter 13. The case was converted on April 18, 2002, and Debtors' Chapter 13 plan was confirmed, without objection, on October 28, 2002. The plan expressly provides for the treatment of Fairbanks' claim as an unsecured claim. The plan states, regarding Fairbanks: "This creditor has failed to provide proof that its mortgage has been recorded, and the title search revealed no evidence of a recorded mortgage in favor of this creditor. Therefore, this alleged mortgage loan balance outstanding is deemed unsecured upon confirmation of this plan, and this creditor's claim will be allowed only as an unsecured claim. Upon completion of payments under this plan, the alleged mortgage loan will be paid in full." *See* Chapter 13 Plan, § 2(b)(iii), Dkt. No. 30. Pursuant to the confirmed plan, Debtors made, and continue to make, payments to the Trustee for distribution to unsecured creditors.

On April 16, 2002, Fairbanks filed a motion for relief from stay. After Debtors

responded, demanding proof that the mortgage had been recorded, Fairbanks filed a proposed order voluntarily dismissing its own motion, on May 23, 2002.[2] The order was entered on May 29, 2002. Nonetheless, on July 1, 2002, Fairbanks filed a proof of claim listing a secured interest in Debtors' property in the amount of $45,362.45. As noted above, the court confirmed the Chapter 13 Plan on October 28, 2002. On February 5, 2003, the Trustee filed his motion to allow claims, and listed Fairbanks' claim (Claim No. 004) as unsecured. *See* Motion to Allow Claims and Order filed on behalf of Chapter 13 Trustee, Dkt. No. 40. On or about August 21, 2003, Debtors filed an objection to Fairbanks' proof of claim, Dkt. No. 43, but later withdrew it and filed the amended objection that is at issue. *See* Dkt. Nos. 43, 45, 46, 48, 49. On August 26, 2003, RealTime filed a notice of transfer of claim, Dkt. No. 44, indicating a transfer from Fairbanks to RealTime. This notice was filed ten months after Debtors' plan was confirmed. *See* Dkt. No. 39, Order of Court Confirming Plan as Modified, *etc.* In their amended objection to claim, Debtors contended that the absence of a recorded mortgage justified treatment of Fairbanks' claim as unsecured. At a hearing held on October 27, 2003, we extended RealTime's response deadline to January 9, 2004, and, on that date, RealTime filed its opposition to Debtors' objection. Dkt. No. 56. At a hearing held on February 9, 2004, we ordered RealTime to submit a brief in support of its opposition to Debtors' objection by February 20, 2004.

On February 19, 2004, RealTime filed its brief in support of its opposition to Debtors' objection to claim. RealTime urged this court to grant it an equitable mortgage. The issue, however, is not whether

---

**2.** A review of various docket entries indicates that the motion was filed in the name of

GRMT III LTD. *See* Docket Numbers 14 and 18.

**26**

this court should grant RealTime an equitable mortgage, because RealTime is the holder of an actual, but unperfected, mortgage. We nonetheless will address the argument and find that there is no basis to grant RealTime an equitable mortgage. *See infra.* The relevant issues for this court to resolve are (1) whether RealTime may perfect its claim by making a postpetition recording of the unrecorded mortgage, and (2) whether RealTime should be granted an equitable lien. We find, for the following reasons, that RealTime may not perfect its claim and, therefore, will remain an unsecured creditor. Further, RealTime is not entitled to an equitable lien.

### DISCUSSION

1. *The binding effect of the confirmed plan bars RealTime from perfecting its lien.*

■ The *res judicata* effect of § 1327(a) bars RealTime from perfecting its lien. Section 1327(a) provides that the terms of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan. 5 Collier on Bankruptcy, ¶ 1327.02[1], at 1327–3 (15th Rev. Ed.2004)(footnotes omitted), states the following:

Upon becoming final, the order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan. Absent timely appeal, the confirmed plan is *res judicata* and its terms are not subject to collateral attack. The *res judicata* effect of confirmation may be eliminated only if confirmation is revoked, or if the case is later dismissed or converted to another chapter.

The purpose of section 1327(a) is the same as the purpose served by the general doctrine of *res judicata.* There must be finality to a confirmation order so that all parties may rely upon it without concern that actions that they may later take could be upset because of a later change or revocation of that order.

■ In addition, the Third Circuit Court of Appeals and bankruptcy courts in this Circuit endorse the Bankruptcy Code's strong policy of favoring the finality of plans of reorganization. *See In re Szostek,* 886 F.2d 1405, 1409 (3d Cir.1989)("the binding effect of a chapter 13 plan extends to any issue actually litigated by the parties and any issue necessarily determined by the confirmation order"); *In re Dickey,* 293 B.R. 360, 363 (Bankr.M.D.Pa. 2003)("the language of a Chapter 13 plan, once confirmed, is to control the debtor/creditor relationship thereafter, even if the terms of the Plan violate the Code"); *In re York,* 250 B.R. 842, 844 (Bankr. D.Del.2000)("[t]he finality of the terms of a Chapter 13 [plan] and its treatment of claims upon confirmation is well established .... 'the finality of the bankruptcy confirmation order bar[s] the creditor from litigating its claim'") (citations omitted).

In the instant case, RealTime seeks to perfect the mortgage that its two predecessors, Fairbanks and Preferred Credit Corporation, failed to record. Authorizing RealTime to perfect its lien (*i.e.,* by recording the mortgage), would change its status from an unsecured to a secured creditor. This action would alter a critical provision of Debtors' Chapter 13 plan. As noted above, § 2(b)(iii) of the plan provides:

Long term or mortgage debt—Fairbanks Capital. This creditor has failed to provide proof that its mortgage has been recorded, and the title search revealed no evidence of a recorded mort-

gage in favor of this creditor. Therefore, this alleged mortgage loan balance outstanding is deemed unsecured upon confirmation of this plan, and this creditor's claim will be allowed only as an unsecured claim. Upon completion of payments under this plan, the alleged mortgage loan will be paid in full.

A post-confirmation treatment of Real-Time as a secured creditor would defeat the *res judicata* purpose of § 1327(a). Furthermore, modifying the plan over two years post-confirmation is nearly impossible as distributions to creditors are well under way. Fairbanks had notice of the plan's treatment of its claim as unsecured. By failing to object, failing to appeal, and accepting its treatment as unsecured under Debtors' plan, Fairbanks consented to its treatment. We note that Fairbanks withdrew its motion for relief from stay after Debtor demanded proof that the mortgage was recorded, which proof was not, and cannot be, provided. Fairbanks had no basis on which to ask for the relief its assignee now seeks. It was incumbent upon Fairbanks to take an active role in protecting its own interests. Fairbanks'· failure to do so does not entitle its successor, RealTime, to complain about the plan treatment. Given the binding effect of Debtors' confirmed plan, this court will not authorize RealTime to take an action inconsistent with the plan's provisions. We have not been provided with copies of the agreement by which the mortgage was assigned. Thus, we do not determine whether RealTime may have relief from the assignment under the agreement, given the unperfected status of this mortgage.

### 2. There is no basis for the creation of an equitable mortgage

In its Post Hearing Brief, Dkt. No. 60, RealTime urges this court to impress an equitable mortgage[3] on Debtors' property in order to prevent Debtors' unjust enrichment. RealTime relies on several cases, including *Branca v. Branca*, 443 A.2d 929 (Del.Supr.1982). In *Branca*, the plaintiffs lent their son $35,000 to enable him to purchase a house upon his upcoming marriage. At settlement, the son placed his fiancee's name on the deed. Although the son married his fiancee, they later divorced. The parents, seeking relief, later brought an action against the son and his former wife. The court impressed an equitable lien upon the entire property, including the son's former wife's interest. The fact that the son intended to gift an interest in the property to his former wife, and that she was not a party to the loan repayment agreement between the son and his parents, did not destroy the equitable lien.

The instant case is distinguishable from *Branca* in several respects. First, the Delaware Supreme Court in *Branca* stated that equitable liens are impressed "to prevent unjust enrichment, *i.e.,* where it would be contrary to equity and good conscience for an individual to retain a property interest acquired at the expense of another." *Branca,* 443 A.2d at 931. RealTime argues that Debtors will be unjustly enriched by over $56,000 if the lien is treated as unsecured. *See* Brief in Support of Opposition, Dkt. No. 60, at 5. This argument is without merit. Debtors are required under the liquidation alternative test to distribute the unencumbered value

---

**3.** In its response to Debtors' amended objection to proof of claim, RealTIme asserted an equitable lien and argued that the mortgage should be enforced as an equitable mortgage. Dkt. No. 56. There is no dispute that as between Debtors and RealTime the mortgage is valid. However, the issue here is whether RealTime's lien is perfected, resulting in secured status.

of the property, less allowed exemptions, to creditors as provided in the confirmed plan. RealTime will share in the dividend to unsecured creditors. In addition, Delaware equitable liens predicated upon unjust enrichment have usually involved unsophisticated and related parties. *See Scotfoam Corp. v. Peddrick,* 1989 WL 152203 *4 (Del.Ch., Dec.13, 1989)(citing *Branca* ). The *Branca* case clearly involved unsophisticated and related parties. The parents could neither speak, read, nor write English. Furthermore, the father was permanently disabled, had a limited formal education, and had minimal income through worker's compensation and social security. The factual setting in *Branca* is distinguishable from the pending situation. Here, Preferred Credit, a sophisticated party, gave an actual mortgage to a customer. Its successors in interest are also sophisticated lenders.

█ Equitable liens are also created in instances where a mortgage, through some defect, is not a legally valid mortgage. Here, however, the mortgage has no defect. It simply was not recorded and thus is not entitled to treatment as a secured claim. RealTime relies on *Handler Construction, Inc. v. CoreStates Bank, N.A.,* 633 A.2d 356 (Del.Supr.1993), a case where the court granted CoreStates Bank an equitable lien because an unsealed mortgage was unenforceable. The court cited 25 Del. C. § 2106, the Delaware statute governing the priority of mortgages:

> A mortgage, or a conveyance in the nature of a mortgage, of lands or tenements shall have priority according to the time of recording it in the proper office, without respect to the time of its being sealed and delivered, and shall be a lien from the time of recording it and not before.

633 A.2d at 363. This statute establishes the priority of mortgages according to the time of recording and without regard to their form, *i.e.,* legal or equitable. *Id.* The court found that the absence of the seal on the CoreStates mortgage was a technical defect that did not affect the validity of the document as an equitable mortgage. *Id.* The case before us is distinguishable in that RealTime's mortgage is not subject to a technical defect. It is unperfected because it is unrecorded. Section 2106 of Chapter 21, 25 Del. C., provides that a mortgage has priority "from the time of recording it and not before." Because the Fairbanks mortgage was never recorded, § 2106 denies the mortgage any priority.

RealTime also submits *In re Pecora,* 297 B.R. 1 (Bankr.W.D.N.Y.2003), which is not binding, and is distinguishable on several grounds. In *Pecora,* the debtors filed a contempt motion against USA Mortgage Bankers of America, Inc., and assignee RealTime Resolutions, Inc., for violating the discharge injunction provided by § 524(a)(2). In that case, in November of 1999, the court authorized the trustee to abandon the estate's interest in the debtors' property because the debtors had insufficient equity in it for the trustee to administer. The creditor recorded the mortgage on the debtors' property in February of 2002 despite the debtors' Chapter 7 filing in October of 1999 and discharge in January of 2000. The *Pecora* court (1) denied the debtors' motion because the recording of the mortgage was to ensure that the mortgage was not affected by the rights of any future bona fide purchaser for value and was not an act to recover the debt as a personal liability of the debtors, in violation of the discharge injunction of § 524(a)(2); (2) found that the mortgage need not be removed because it was not in violation of § 524 or § 362; and (3) determined that the recording would serve to prevent a bona fide purchaser for value from extinguishing the value of the equita-

ble lien of the mortgage. *See Pecora,* 297 B.R. at 4.

Most notable about *Pecora* is that it was a Chapter 7 case in which the court did not actually impress an equitable mortgage but instead recognized that the equitable lien, created by operation of New York law when the unrecorded mortgage was validly executed and delivered, was not avoided in, and therefore survived, the debtors' bankruptcy unaffected. The *Pecora* court thus reasoned that the creditor retained its right to payment from the sale of the debtors' property, although the debtors' personal liability for the mortgage had been discharged. Here, however, unlike the facts in *Pecora,* the Trustee has not abandoned the property and the confirmed plan correctly treats the claim as unsecured and provides for payment as required by the Bankruptcy Code.[4]

### 3. *Applicability of § 544(a)(3)*

Although neither party has raised this issue, we must mention another consequence that would inure if RealTime were permitted, at this late date, to record its mortgage, further illustrating the reason why a confirmation order has res judicata effect. Even if the plan confirmation order were not *res judicata,* the Trustee's avoidance powers pursuant to § 544(a)(3) may come into play, leading to yet more litigation. Section 544(a), the "strong arm" clause, provides in pertinent part:

> (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee

or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

> . . .

> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

Thus, on December 28, 2001, the date of Debtors' Chapter 7 filing, § 544(a)(3) conferred upon the Trustee the rights of a bona fide purchaser since real property is at issue. Though these powers arise under federal law, "the scope of these avoidance powers vis-a-vis third parties is governed entirely by the substantive law of the state in which the property in question is located." *In re Bridge,* 18 F.3d 195, 200 (3d Cir.1994). Thus, even if the confirmation order could be set aside, in this case the Trustee may attempt to assert his powers to avoid the secured status and restore the unsecured status of this mortgage.[5]

We find one Delaware case particularly instructive, *In re Poteat,* 176 B.R. 734, (Bankr.D.Del.1995). In *Poteat,* the trustee objected to the proof of claim filed by creditor Mellon Bank. Mellon asserted that it had a claim in the amount of $20,290.23, secured by a mortgage on the debtors' property. The trustee objected to Mel-

---

4. The unsecured creditors in *In re Pecora,* 297 B.R. 1 (Bankr.W.D.N.Y.2003) would not have benefitted whether or not the encumbrance was recognized. The trustee abandoned the property because there was no equity in it for the benefit of unsecured creditors. The opposite result would occur in this case.

5. Although § 546(a) establishes a statute of limitations for avoidance actions brought under § 544, query whether the unique circumstances of this case, where a third holder of an unrecorded mortgage appears in court to revisit the question two years after the issue of its status was first raised, would not justify an equitable tolling of the limitations period.

lon's secured status on the grounds that the inadequate property description in the mortgage document rendered the mortgage unenforceable, and therefore avoidable under § 544(a)(3). Under Delaware law, the property subject to the mortgage must be adequately described "with sufficient certainty" for the mortgage to be effective. *See Matter of 1025 Assocs., Inc.,* 106 B.R. 805, 809 (Bankr.D.Del.1989). The court agreed with the trustee, observing that the mortgage contained no metes and bounds description, no street address, no street or road name, no tax parcel number, and no reference to any other recorded instrument which could provide the missing information. *Poteat, supra,* 176 B.R. at 737. The debtors owned three parcels of land. Consequently, the trustee was entitled to avoid the mortgage because it would be impossible for him to determine from the public records which of the debtors' properties was in fact the subject of the mortgage.

As in *Poteat,* here, if RealTime were permitted the relief it seeks, the Trustee would have an action under § 544(a)(3). As a hypothetical bona fide purchaser, the Trustee would be deemed to have conducted a title search of Debtors' Middletown property, paid value for the property, and perfected (*i.e.,* recorded) his interest as of the date of Debtors' commencement of the case. *Bridge, supra,* 18 F.3d at 204. A hypothetical purchaser who would have searched the title of the property located at 433 Boxwood Lane, Middletown, Delaware, would have no notice of Fairbanks' mortgage, and thus would have satisfied the prerequisites for hypothetical bona fide purchaser status as to that mortgage.[6] Similarly, the *Poteat* trustee who would have searched the title of the parcel in question would have had no notice of Mel-

lon's mortgage (*i.e.,* due to the inadequate description) and therefore would acquire the status of legal title holder of the property, free from Mellon's lien. In the instant case, therefore, the Trustee as hypothetical bona fide purchaser pursuant to § 544(a)(3) would acquire the Middletown property free from the unrecorded mortgage. The trustee would undoubtedly pursue such an action in this case because the avoidance of the mortgage would benefit the unsecured creditors to the same extent they are benefitted through the confirmed plan.

By treating the claim as unsecured, the confirmed chapter 13 plan provided the same dividend to creditors that would be provided if the case had remained in chapter 7 and the trustee had used his strong arm powers, or if RealTime were permitted to record its lien and the Chapter 13 Trustee undertook the avoidance action. Under any scenario, RealTime holds an unperfected mortgage which, in turn, is treated as an unsecured claim in this bankruptcy.

### CONCLUSION

Therefore, in consideration of the foregoing, we find that RealTime may not make a postpetition recording of the unrecorded mortgage. RealTime is barred from taking such an action by the *res judicata* effect of Debtors' confirmed Chapter 13 plan. RealTime's claim is unsecured.

An appropriate order will be entered.

### ORDER OF COURT

AND NOW, this 8th day of September, 2004, for the reasons stated in the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DE-**

---

6. The mortgage in question is the third mortgage. The first and second were recorded.

This Memorandum Opinion does not address those mortgages.

**CREED** that Debtors' objection to Fairbanks proof of claim is **sustained.** Real-Time Resolutions, Inc., holds an unsecured non-priority claim.