**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

KIM E. AYVAZIAN
MASTER IN CHANCERY

CHANCERY COURTHOUSE
34 The Circle
GEORGETOWN, DELAWARE 19947
AND
NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19980-3734

July 15, 2014

Daniel T. Conway, Esquire
Atlantic Law Group, LLC
512 East Market Street
Georgetown, DE 19947

Earl Strong
PO Box 471
11 Gooseneck Lane
Smyrna, DE 19977

> RE: *Wells Fargo Bank, NA v. Earl Strong*, C.A. No. 8538-MA

Dear Counsel and Mr. Strong:

Pending before me are Plaintiff Wells Fargo Bank's exceptions to my draft report in which I recommended that its complaint seeking the imposition of an equitable lien on real property located at 11 Gooseneck Lane, Smyrna, Delaware 19977 be dismissed as having been untimely transferred from the Superior Court under 10 *Del. C.* § 1902. For the reasons that follow, I am adopting my draft report as my final report, as modified herein.

Factual and Procedural Background:

By way of background, I will summarize the facts as described by the Superior Court in the original foreclosure case, Civil Action No. 05L-06-008 WLW.[1] Defendant Earl Strong had agreed to a mortgage on his property located at 11 Gooseneck Lane, Smyrna with MIT Lending on October 22, 2004, in exchange for a loan in the amount of $205,277.00.[2] After Strong failed to tender monthly payments of $1,133.55 as required, Mortgage Electronic Registration Systems, Inc. (hereinafter "MERS"), as nominee of MIT Lending, filed a foreclosure action in Superior Court on June 10, 2005.[3] After default judgment was entered on November 3, 2005, MERS filed a writ of *levari facias* on January 31, 2006, but the foreclosure was repeatedly halted by automatic stays after Strong filed three successive *pro se* bankruptcy petitions.[4] On November 23, 2010, MERS received a recorded assignment in favor of Wells Fargo, and filed a writ of *levari facias* in the name of Wells Fargo in Superior Court on January 11, 2011.[5] The Superior Court judge instructed the attorney for Wells Fargo to submit a memorandum detailing the history of the mortgage and explaining the significance of the assignment, and informed Strong that he could file a motion to vacate the default

---

[1] *Mortgage Electronic Registration Systems, Inc. v. Strong*, 2011 WL 5316766, at *1 (Del. Super., Oct. 19, 2011).
[2] *Id.*
[3] *Id.*
[4] *Id.*
[5] *Id.*

judgment if he wished to contest its legitimacy.[6] After the motion to vacate and legal memorandum were filed, the Superior Court *sua sponte* decided that the mortgage and note had not been properly sealed and, therefore, were not enforceable at law.[7] The Superior Court concluded that it lacked subject matter jurisdiction over the case and, on October 19, 2011, issued an order dismissing the foreclosure action under Super. Ct. Civ. Rule 12(h)(3) and 10 *Del. C.* § 1902, "without prejudice, to be filed within 60 days of this Order in the Court of Chancery."[8]

Nearly one month later, on November 17, 2011, MERS filed a written election to transfer the case to this Court.[9] On November 18, 2011, the Superior Court approved the election to transfer.[10] Nearly 18 months later, on May 8, 2013, Wells Fargo filed its complaint for an equitable foreclosure against Strong in this Court.[11] The caption describes Wells Fargo as "assignee of Mortgage Electronic Registrations Systems, Inc., as nominee for MIT Lending," and the complaint as an

---

[6] *Id.*

[7] *Id.* The Superior Court also observed that there was an outstanding issue regarding the mortgage/loan assignment because the original complaint and the default judgment were in the name of MERS. *Id.* at n. 1 ("Plaintiff suggests two possible solutions: 1) as the assignment is alleged to have been filed in error, vacate it through filing a motion; or 2) let the assignment stand and substitute Wells Fargo, N.A., as plaintiff.").

[8] *Id.* at *2.

[9] Verified Complaint, Ex. E, Docket Item No. 1 (*Wells Fargo Bank, N.A. v. Strong*, C.A. No. 8538-MA) (hereinafter "D.I.").

[10] *Id.*

[11] D.I. No. 1.

*In Rem Sci. Fa. Sur Mortgage* action.[12]  On June 26, 2013, Strong filed a *pro se*
Motion to Dismiss, citing Court of Chancery Rule 12(b)(1), (2), (3), (4), (5), and
(6).[13]  Among other issues, Strong argued that Wells Fargo had failed to transfer its
case to this Court within 60 days of the Superior Court Order dated October 19,
2011.  I subsequently recommended that the case be dismissed as untimely
transferred in a draft report issued on August 29, 2013.[14]

Issues:

In its exceptions to my draft report, Wells Fargo addresses four issues:
service of the complaint, verification of the complaint, the validity of the mortgage,
and whether the complaint in Chancery Court was timely filed.  Only the last issue
warrants discussion here.  According to Wells Fargo, its complaint is timely
because "[a] little over a month following the Superior Court's approval of
Plaintiff's Election to Transfer the case to Chancery Court,"[15] Strong filed a *pro se*
civil action against Wells Fargo and its attorney, Thomas Barnett, Esq., in Superior
Court,[16] seeking damages for fraud, forgery, perjury, defamation, conspiracy,
malicious prosecution, and deceptive trade practices, arising out of the Superior
Court mortgage and foreclosure action.  According to Wells Fargo, had its

---

[12] *Id.*
[13] D.I. No. 8.
[14] D.I. No. 15.
[15] Plaintiff's Opening Brief at p. 10.  D.I. No. 25.

equitable foreclosure case already been filed in this Court, it would not have been able to go forward until Strong's *pro se* civil action in Superior Court had concluded because a final determination there might have materially affected this equitable action. On July 20, 2012, the Superior Court granted summary judgment in favor of the defendants on all claims but one.[17] On November 30, 2012, the Superior Court dismissed Strong's remaining claim and his complaint in its entirety,[18] and denied Strong's *pro se* motion for reargument on January 3, 2013.[19] Strong's *pro se* appeal to the Supreme Court was dismissed by stipulation of the parties on May 6, 2013, following Strong's motion to withdraw the appeal filed on April 26, 2013.[20] Five days after the appeal was dismissed, on May 8, 2013, Wells Fargo filed its complaint for an equitable foreclosure in this Court.

Wells Fargo argues that, instead of its case being dismissed by the Court because of the 18-month delay in transferring the case, its counsel simply should be faulted for not notifying this Court of Strong's civil action and requesting a stay. Wells Fargo further argues that to allow Strong to retain possession of the real

---

[16] *Strong et al. v. Wells Fargo Bank et al.*, C.A. No. K12C-01-021 WLW (Del. Super.). Both Strong and his wife were plaintiffs in this action, but I will refer to them simply as "Strong" to avoid repetition.

[17] *Strong et al. v. Wells Fargo Bank et al.*, 2012 WL 3549730, at *3 (Del. Super. July 20, 2012) (plaintiffs were given ten days to file a more definite statement of their "deceptive trade practices" claim).

[18] *Strong et al. v. Wells Fargo Bank et al.*, 2012 WL 6961995, at *3 (Del. Super. Nov. 30, 2012).

[19] *Strong et al. v. Wells Fargo Bank et al.*, 2013 WL 1228028, at *2 (Del. Super., Jan. 3, 2013).

property at 11 Gooseneck Road would result in Strong's unjust enrichment at the expense of Wells Fargo.

Strong's *pro se* arguments in support of my draft report are somewhat rambling and disjointed. Among other issues, Strong repeats his claims that the mortgage is invalid as a product of consumer fraud and deceptive trade practices, and that the transfer of the note from MIT Funding to Wells Fargo was through a falsified document. According to Strong, this case does not lie within the jurisdiction of the Chancery Court, but should be prosecuted as a criminal case by the Attorney General.

Analysis:

10 *Del. C.* § 1902 provides:

No civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter, either in the original proceeding or on appeal. Such proceeding may be transferred to an appropriate court for hearing and determination, provided that the party otherwise adversely affected, within 60 days after the order denying the jurisdiction of the first court has become final, files in that court a written election of transfer, discharges all costs accrued in the first court, and makes the usual deposit for costs in the second court. All or part of the papers filed, or copies thereof, and a transcript of the entries, in the court where the proceeding was originally instituted shall be delivered in accordance with the rules or special orders of such court, by the prothonotary, clerk, or register of that court to the prothonotary, clerk, or register of the court to which the proceeding is transferred. The latter court shall thereupon entertain such applications in the proceeding as conform to law and to the rules and practices of such court, and may by rule or special order provide for amendments in pleadings

---

[20] *Strong et al. v. Wells Fargo Bank et al.*, Del. Supr., No. 37, 2013, D.I. No. 18.

and for all other matters concerning the course of procedure for hearing and determining the cause as justice may require. For the purpose of laches or of any statute of limitations, the time of bringing the proceeding shall be deemed to be the time when it was brought in the first court. This section shall be liberally construed to permit and facilitate transfers of proceedings between the courts of this State in the interests of justice.

The transfer period runs from the date of the order denying the jurisdiction of the first court, which in this case was October 19, 2011.[21] Although MERS filed a timely written election to transfer on November 17, 2011, which was approved by the Superior Court the following day, there is no record that of MERS' complaint being lodged in this Court and assigned a new civil action number before the expiration of the 60-day time period on December 19, 2011. The fact that Strong subsequently filed his civil action against Wells Fargo and its attorney on January 19, 2012, does not change the analysis since the transfer period had already expired without MERS having perfected the transfer of its case by making "the usual deposit for costs" in this Court within 60 days of the date of the Superior Court Order.[22] MERS failed to follow the direct order of the Superior Court dated October 19, 2011, which mandated it to transfer its case to this Court within 60

---

[21] *Lorenzetti v. Hodges*, 2012 WL 14103, at n. 7 (Del. Super. Jan. 27, 2012) (citing *Wilmington Trust Co. v. Schneider*, 342 A.2d 240, 241 (Del. 1995))
[22] 10 *Del. C.* § 1902

days.[23] MERS also failed to abide by the plain language of Section 1902, which required it to make "the usual deposit of costs in the second court" within 60 days.

By its own terms, Section 1902 must be "liberally construed to permit and facilitate transfers of proceedings between the courts of this State in the interests of justice."[24] It is "a remedial statute designed to prevent a case from being totally ousted because it was brought in the wrong Court."[25] The remedy was properly applied by the Superior Court in this case; that is, having filed the foreclosure action in the wrong court, MERS was given the opportunity by the Superior Court to transfer its case to the Court of Chancery. MERS started to effectuate the transfer, but then failed to complete the process, contrary to the statute and the Superior Court's October 19, 2011 Order.

Wells Fargo nevertheless argues that it should be allowed to proceed with its complaint for an equitable foreclosure because otherwise Strong would be unjustly enriched at the expense of the mortgage holder. In support of its argument, Wells Fargo cites *Branca v. Branca*, 443 A.2d 929 (Del. 1982), a case involving an immigrant couple who had furnished the entire consideration for the purchase of a home for their son and his intended wife. After determining that the parents had

---

[23] *See, e.g., Admiral Holding v. Town of Bowers*, 2004 WL 2744581 (Del. Super. Oct. 18, 2004).
[24] *Id.*

intended the transaction as a loan, the Chancery Court nevertheless refused to impress an equitable lien on the real estate, holding that the parents were only entitled to a judgment against their son after the son failed to repay the loan following the dissolution of his marriage three years later.[26] It ordered the real estate to be sold with the net proceeds distributed one half to the parents and the other half to the son's former wife, whose name had been placed on the deed by her then-husband. On appeal, the Supreme Court reversed, concluding that the lower court had failed to properly apply equitable principles in this familial setting to prevent unjust enrichment of the son's former wife, who had contributed no funds of her own to the purchase of the property.[27]

In contrast to the family situation above, this case involves a sophisticated financial institution lender and an individual whose pleadings suggest that he has had only a minimal level of formal education. In particular, I take judicial notice of Strong's *pro se* appeal to the Supreme Court from the decisions of the Superior Court in his civil action against Wells Fargo and its attorney. The docket in No.

---

[25] *Wilmington Trust Co. v. Schneider*, 342 A.2d 240, 242 (Del. 1975). *See, e.g., Family Court v. Giles*, 384 A.2d 623, 624-625 (Del. 1978) (reversing Superior Court decision that denied motion to transfer case under the provisions of 10 *Del. C.* §1902).
[26] *Branca*, 443 A.2d at 931.
[27] *Id.*

37, 2013 reveals that on April 26, 2013,[28] Strong filed a *pro se* Motion to

Withdraw the Appeal in which he stated at paragraph 8:[29]

> In Judge Witham October 19, 2011 Decision it stated that Mers Attorney had 60 days to file their Supporting Affidavit and statement of the facts to Chancery Court this was never executed and the chancery Court Never except the transfer to Chancery Court after the Chancery Clerk I believe was named (Bebra) made Several calls and Demands to Wells Fargo Attorneys Thomas Barnett and his law Firm to comply with The Chancery court Rules, Mr. Barnett Law Firm stated and informed the Chancery Clerk that they Were no Longer Pursuing the Mers Case, do to Mr. BARNETT and His Law firm Refusal to Comply to the Chancery Court Rules against Accepted the Transfer and Never Created a Court docket or number it has been over two years since, The 60 Days' time Allowed Have expired for more than two years. This Issue is Mute. And Due to other prior Chancery Court Ruling and the Delaware Attorney General Complaint this wouldn't stand a Chance in Chancery Court.[30]

In conclusion, Strong requested:

> Wherefore Appellants Earl Strong and Lillie Strong ask this SUPREME COURT to Withdraw Appellants Appeal, we no longer want to pursue this Appeal because Judge Witham is an Honorable Respectable Judge, and As was stated Appellants doesn't want another Piece of the Pie.[31]

It appears from these excerpts that after years of litigation between the

parties, Strong voluntarily withdrew his Supreme Court appeal because he believed

that Wells Fargo had abandoned its efforts to foreclose on his home. By

withdrawing his appeal, Strong gave up the possibility – no matter how remote - of

---

[28] *Strong v. Wells Fargo Bank, et al.*, No. 37, 2013 (Del. Supr.), Docket Item No. 15.
[29] I have made no effort to correct any errors in grammar, spelling, punctuation, or capitalization in the two excerpts from Strong's *pro se* motion.
[30] D.I. 15, No. 37, 2013.
[31] *Id.*

obtaining monetary damages from Wells Fargo and Barnett for what he contended were their fraudulent practices, among other claims of alleged misconduct. Thus, even if I were to ignore the plain language of 10 *Del. C.* § 1902 requiring the transfer of a case to another court to occur within 60 days from the date of the order denying the jurisdiction of the first court, I would have to conclude that it would be contrary to the general equitable principles of right and justice to allow Wells Fargo's complaint to proceed after Strong voluntarily dismissed his appeal in the Supreme Court.

Conclusion:

For the foregoing reasons, I recommend that the Court grant Strong's motion to dismiss Wells Fargo's complaint for an equitable lien as untimely transferred. The parties are referred to Court of Chancery Rule 144 for taking exception to a Master's Final Report.

Sincerely,

/s/ Kim E. Ayvazian

Kim E. Ayvazian
Master In Chancery

KEA/kekz